INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS, LOCAL NO.
1881, Appellee,

v.

Julius HARALSON et al., Appellants.

No. 49016.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 26, 1976.

Rehearing Denied Nov. 30 1976.

Released for Publication by Order of Court
of Appeals Dec. 30 1976.

Mordy & Clark by James A. Clark, Ardmore, for appellee.

Ted J. Pasley, City Atty., Ardmore, for appellants.

ROMANG, Judge:

This action was filed by International Association of Fire Fighters, Local No. 1881, located at Ardmore, Oklahoma. The defendants are the City Manager and City Commissioners of the City of Ardmore.

Plaintiff alleges that on July 23, 1975, the City Manager, with the implicit authority of the City Commissioners, issued and promulgated an administrative policy wherein certain members of the Fire Department were to serve as peace officers or law enforcement officers at the Ardmore Airpark; that subsequent to said order, three members of Local 1881 refused to assume the duties prescribed, and as a result the City Manager caused them to be demoted in job classification from drivers to plugmen with a decrease in salary; that said actions of the defendants were illegal and in violation of the City Ordinances which define the duties of firemen; that plaintiff is without an adequate remedy at law; and that a temporary injunction should be granted as to those portions of said policy requiring them to serve as peace officers.

On July 11, 1975, the trial court issued a Temporary Restraining Order restraining the defendants from exercising any authority under the administrative policy, and set this case for hearing on the application for a temporary injunction.

On September 26, 1975, a hearing was held, and at that time the trial court granted an injunction against the defendants as prayed, and reinstated the three firemen to drivers status with back pay.

Defendants have appealed, and here present the following proposition:

"That an injunction should not lie in this situation against the Board of Commissioners of a municipality and its city manager who are public officers acting within the scope of their authority and duty as to acts involving the performance of ministerial or administrative duties, except in case of gross abuse of their discretion founded on fraud, corruption, improper motive, plain disregard of duty, gross abuse of power, or violation of law. That there is no such gross abuse of such discretion in this case nor violation of law and therefore an injunction will not lie."

The Ardmore Airpark is an abandoned Air Force Base which belongs to the City of Ardmore and is located about ten miles north of that City.

Administrative Policy No. 8, which is in question, reads in part:

"During non-working hours of the Airpark maintenance personnel, firemen are responsible for making periodic fire safety patrols, keeping alert for unlocked buildings and any other situations which may be inviting to burglary or arson or situations which may indicate that any illegal activity is in progress, has been committed or may be committed and for reporting all such situations to appropriate authorities. During such patrols the firemen shall secure those facilities which are caused by occupant neglect or notify the occupant."

Sections 3 and 7 of the Ardmore City Charter, read:

". . . it (City) shall have power to ordain and to enforce local legislation, consistent with the State Constitution and Law, for the proper organization and functioning of the city government, for the preservation and enforcement of good government and order, for the protection of health, life, morals and property, for the prevention, summary abatement and removal of nuisances, and otherwise for the promotion of the common welfare . . . .

\* \* \* \* \* \*

"Except as otherwise provided in this charter, all powers of the city, including the determination of all matters of policy, shall be vested in the commission. Without limitation of the foregoing, the commission may:

". . . (10) Create, change and abolish all offices, departments and agencies of the city other than the offices, departments and agencies created by this charter, and assign additional powers, duties and functions to offices, departments and agencies created by this charter."

Chapter 10, Art. III, Section 10–37 of the Ardmore City Ordinances, reads:

"It shall be the duty of the fire department, among others, to extinguish fires; to rescue persons endangered by fires; to resuscitate, and to administer first aid to, persons injured in or about burning structures, or elsewhere in case of an emergency when it can be done without jeopardy to the public interest; to promote fire prevention; and unless otherwise provided, to enforce all ordinances relating to fires, fire prevention and safety of persons in theaters, stores, and other public buildings."

In accordance with the provisions of 11 O.S.1971, § 548.1 et seq., the Firefighters' and Policemens' Arbitration Law, the City of Ardmore and Local No. 1881 entered into an agreement which reads:

"MANAGEMENT RIGHTS

"*Section 1.* The Union recognizes the prerogative of the City to operate and manage its affairs in all respects in accordance with its responsibilities, and the powers or authority which the City has not officially abridged, delegated, or modified by this agreement are retained by the City. Management officials of the City retain the rights in accordance with applicable laws and regulations, including but not limited to the following:

"(A) To manage and direct all employees of the Ardmore Fire Department.

"(B) To hire, promote, transfer, assign, retain and schedule hours and places of work of employees in positions with the Ardmore Fire Department.

"(C) To suspend, demote, discharge or take other appropriate disciplinary action against all employees of the Ardmore Fire Department for just cause.

\* \* \* \* \* \*

"*Section 3.* It is understood by the parties that every incidental duty connected

with operation enumerated in job descriptions is not always specifically described and employees, at the discretion of the City, may be required to perform duties not within their job description."

A reading of the evidence reveals that the primary objection of the firemen involved, is that the new policy would interfere with their outside employment in their days off from the fire department. The firemen assigned to the Airpark were not permitted to carry weapons or to make arrests. They were to check buildings and watch for cars, and if they observed anything suspicious, they were to use their patrol car radio to call the Ardmore police. They were also to watch for any fires that might occur in any of the Airpark buildings and to call the Ardmore Fire Department.

The Chief of Police of Ardmore testified that he would classify the work of the firemen at the Airpark as "just watchman," and that it was never the intent of the administrative policy to make police officers of the firemen.

The Assistant Chief of Police testified that the firemen were instructed not to go in or about the Airpark buildings, but they were to watch for broken windows, kicked in doors and other things of that nature, and if they saw anything wrong, they were to call the Ardmore police who would come out and check the matter.

The City Manager testified that the policy in question, would provide much better service to the Airpark in the way of fire protection. He mentioned other advantages including the fact that they could provide the same services and protection with five people that they had been providing with seven. The City Manager further testified that the police markings were to be taken off the cars which firemen would use in patrol duty at the Airpark. He also testified that according to an Attorney General's opinion, this patrol duty would not jeopardize the firemen's right to receive their pension.

In *Moore v. Porterfield*, 125 Okl. 217, 257 P. 307 (1927), the court syllabus states:

"The law presumes the validity and regularity of the official acts of public officers within the line of their official duty, and this presumption obtains until overcome by proof, as to acts involving the performance of ministerial or administrative duties.

"The discretionary powers of a public official will not be controlled by injunction except in case of a gross abuse of such discretion founded on fraud, corruption, improper motive, plain disregard of duty, gross abuse of power, or violation of the law."

The evidence in the instant case shows that the Ardmore City Manager and City Commissioners acted within the authority granted by the City Charter and City Ordinances, and within their discretionary powers as public officials. There is no evidence of fraud, corruption, improper motive, plain disregard of duty, gross abuse of power, or violation of law on the part of the defendants.

In *White v. Pottawatomie County*, 199 Okl. 103, 184 P.2d 446 (1947), the court syllabus reads:

"Where public officials are intrusted with discretionary power in certain matters, their exercise of such discretion will not be controlled by injunction in absence of any showing that their action is fraudulent or in bad faith."

Plaintiff's evidence does not show that the complained of action was fraudulent or in bad faith.

The judgment of the trial court is contrary to the evidence and the law, so it is therefore reversed.

REVERSED.

REYNOLDS, P. J., and BOX, J., concur.