**Olan Randle ROBISON, Appellee,**

v.

**Gary MAYNARD, Individually and in his capacity as Director of the Oklahoma Department of Corrections, Dan Reynolds, Individually and in his capacity as Warden of the Oklahoma State Penitentiary, Appellants,**

**and**

**Fred Jordan, in his capacity as Chief Medical Examiner of the State of Oklahoma, Defendant.**

No. 79261.

Court of Appeals of Oklahoma, Division No. 4.

Nov. 3, 1992.

Certiorari Denied July 13, 1993.

Randy Alan Bauman, Oklahoma City, for appellee.

Neal Leader, Asst. Atty. Gen., Oklahoma City, for appellants.

## MEMORANDUM OPINION

STUBBLEFIELD, Judge.

Plaintiff Olan Randle Robison was sentenced to death by the District Court of Stephens County, and the execution was to be carried out on March 13, 1992, at the state penitentiary at McAlester. On March 11, 1992, he filed a petition seeking a declaratory judgment affirming his right to direct the manner—cremation—by which his body was to be disposed. He also sought relief by injunction and/or restraining order preventing various defendants from permitting or performing an autopsy after his execution.

After hearing on March 12, 1992, the trial court granted a temporary injunction and, in open court, ordered Dan Reynolds, Warden of the Oklahoma State Penitentiary "not to turn the body of the petitioner over to the State Medical Examiner for purposes of conducting an autopsy." After hearing on March 13, the trial court entered an order that the Warden "ensure that the body will not be autopsied by the Chief Medical Examiner or any other person, unless allowed by Order of this Court, or by Order or Writ issued by a higher court." The Warden and the Director of the Department of Corrections appeal.

■ In the response to the petition in error, it was proposed that the appeal should be dismissed as moot because counsel for Plaintiff had dismissed the underlying action, and Plaintiff's body had been autopsied and released for burial. However, Plaintiff's counsel stated that there was "no objection to continuing this appeal in the interest of deciding an issue of continuing concern." Defendants ask this court to review the merits of the controversy because (1) the challenged event is "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), *quoted in Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), and (2) the question presented is of "broad public interest." *Marquette v. Marquette*, 686 P.2d 990, 992 (Okla.Ct.App.1984).

We are persuaded that, indeed, a question of public interest is presented. Furthermore, the issue is capable of costly, repetitive litigation. Therefore, we will decide the case on the merits.

■ Defendants first propose that the trial court erred in finding that the provisions of 63 O.S.1991 § 938, do not require the medical examiner's office to conduct an investigation into Plaintiff's death. Plaintiff proposed to the trial court and proposes to this court that his death, the result of an execution observed by many people, would not be an unexplained death and, therefore, the provisions of the "Unexplained Deaths Act," which require an autopsy, were not applicable. Defendants, on the other hand, contend that the trial court erred in relying on the chapter heading of "Unexplained Deaths" in interpreting section 938.

Title 63 O.S.1991 § 938, provides:

All human deaths of the types listed herein shall be investigated as provided by this act:

. . . .

(g) deaths of any inmates occurring in any place of penal incarceration; and

(h) deaths of persons whose bodies are to be cremated. . . .

Unquestionably, Plaintiff's death occurred in a place of penal incarceration, and his body was to be cremated. Thus, the statute requires "investigation" unless it can be determined that section 938 and related statutes deal only with "unexplained deaths" as stated in the chapter title.

In enacting S.B. No. 81, 1961 Okla. Sess.Laws, ch. 30, the codifiers entitled the chapter, "Board of Unexplained Deaths." The intent for the enactment was stated as: "AN ACT relating to unexplained deaths; creating a board with authority to employ a state medical examiner ... with authority to investigate such deaths...." *Official Session Laws* 604 (1961).

Although the heading preceding the chapter number in the *Oklahoma Session Laws 1972* 517 (West), retains the title,

"Public Health and Safety—Unexplained Deaths," the legislature changed the law in 1972 by enactment of H.B. No. 1401, 1972 Okla.Sess.Laws, ch. 246 (emphasis added), which was described as follows:

AN ACT RELATING TO PUBLIC HEALTH AND SAFETY;

AMENDING 63 O.S.1971, §§ 931, 933 THROUGH 951, AND 954; CHANGING BOARD OF UNEXPLAINED DEATHS TO THE BOARD OF MEDICOLEGAL INVESTIGATIONS; ... PROVIDING FOR CHIEF MEDICAL EXAMINER, FIXING HIS QUALIFICATIONS, AND DEFINING HIS AUTHORITY AND DUTIES; ... PROVIDING FOR INVESTIGATIONS TO DETERMINE CAUSE AND/OR MANNER *OF CERTAIN HUMAN DEATHS;* PROVIDING FOR AUTOPSIES....

Thus, the legislature specifically changed the "title" of the body of law, 63 O.S.1991 §§ 931, 933 through 951, and 954, from "Unexplained Deaths" to "Medicolegal Investigations." Furthermore, the court in *Allen v. Board of Trustees of Oklahoma Uniform Retirement System for Justices and Judges,* 769 P.2d 1302, 1305 (Okla.1988), stated:

Under the constitutional mandate of Art. 5, § 43, Okl. Const., the Legislature must revise Oklahoma laws every ten years. If the substance of the revision is not otherwise prohibited by the Constitution the revision will stand as authorized. A statute's incorporation in a decennial compilation purges or cures any defect present in that enactment's title. By relation back the incorporation gives the statute validity from the date of the original enactment in a flawed form. (Footnotes omitted.)

The statutes applicable herein have been incorporated into both the 1981 and 1991 decennial compilations. Thus, any potential defect in the enactment's title has been cured. Accordingly, Plaintiff's emphasis and the trial court's focus on the term, "unexplained deaths," were misplaced.

■ Defendants also propose that the trial court erred, when under the guise of

issuing a temporary injunction, it substituted its judgment and discretion for that of the medical examiner as to whether an investigation into the cause and manner of Plaintiff's death required an autopsy. Again, we agree with Defendants' contention.

Title 63 O.S.1991 § 941, *requires* the medical examiner to conduct an investigation into any death which is specified for investigation under the terms of the act. Section 944 (emphasis added) states:

When necessary in connection with an investigation to determine the cause and/or manner of death *and when the public interest requires it,* the Chief Medical Examiner [or] his designee ... shall require and authorize an autopsy to be conducted.

Plaintiff argues for a conjunctive reading of the language "investigation to determine the cause and/or manner of death *and* when the public interest requires it." He contends that where there has been a legal execution the first requirement has been satisfied because the "cause and/or manner of death" is known, and thus the medical examiner has no discretion to perform an autopsy on the single public-interest criterion. We do not agree.

When read in context of the mandates of section 938, section 941 provides that the medical examiner shall immediately conduct an investigation into the cause and manner of death when he is notified of the death of an inmate who died "in any place of penal incarceration." Therefore, by statutory mandate the medical examiner must determine the cause and/or manner of death when an inmate has been executed under the laws of this state.

The Deputy Chief Medical Examiner testified that the Office of the Chief Medical Examiner "take[s] jurisdiction for at least the reason that the death [has] occurred in penal incarceration" and that "it has been the long standing policy ... that it is always in the public interest to [perform] an autopsy on any death that occurs in penal incarceration." The medical examiner testified as to the purpose of investigating a

death known to be an execution by the State of Oklahoma:

It is my opinion and the opinion of our agency that any time the State takes a person's life by legal execution that it is always in the public interest that an autopsy and complete toxicology be [performed] and that it be [performed] by an authority that is totally independent of the agency that conducted the execution and that has no interest at all or ... is not in any way under control of that agency in order to protect the public interest.

The medical examiner explained the various aspects of public interest that would be protected by conducting an autopsy. He further testified that the autopsy would not interfere in any way with the ability of Plaintiff's family to dispose of the body as he chose. Thus, there is undisputed evidence that a person's right to dispose of his body in the manner in which he chooses, 21 O.S.1991 § 1151, is not infringed upon by allowing the Chief Medical Examiner to perform his mandatory investigation.

■ It is well established in Oklahoma that discretionary powers of public officials will not be controlled by injunction "in absence of any showing that their action is fraudulent or in bad faith." *White v. Pottawatomie County*, 199 Okla. 103, 184 P.2d 446 (1947) (syllabus 5); *see also Moore v. Porterfield*, 125 Okla. 217, 257 P. 307 (1927) (syllabus 2); *International Ass'n of Fire Fighters, Local No. 1881 v. Haralson*, 558 P.2d 415 (Okla.Ct.App.1976). Herein, the record is devoid of any evidence of fraudulent intent or bad faith. Indeed, the Warden, all law enforcement officers and state and county officials are under a statutory mandate to cooperate with the medical examiner and to assist in making a body available for investigation. 63 O.S.1991 § 940. Here, the evidence strongly supports a conclusion that the only breach of duty in the exercise of discretion would have been if the medical examiner had *not* (1) performed an investigation, including autopsy, (2) affirmatively established the cause of death, (3) ruled out any possibility that the State had failed to protect the

rights of the inmate during his incarceration, and (4) established that the execution had been carried out in the manner prescribed by law.

Based upon the foregoing, we find that the trial court erred in granting the temporary injunction to prevent Defendants from fulfilling their statutory obligations, which had the effect of preventing the Chief Medical Examiner from performing his statutory duties to investigate the type of death which occurred herein.

REVERSED.

BACON, C.J., and BOUDREAU, J., concur.