Julie M. MARQUETTE, Appellee,

v.

Jeff L. MARQUETTE, Appellant.

No. 59485.

Court of Appeals of Oklahoma,
Division No. 1.

May 15, 1984.

Released for Publication by Order of
Court of Appeals June 11, 1984.

Charles R. Hogshead, Tulsa, for appellee.

J. Bradford Griffith, Tulsa, for appellant.

REYNOLDS, Judge:

Jeff L. Marquette appeals trial court's orders of October 13, 1982, and November 19, 1982, restraining him from abusing, injuring, threatening or harassing his ex-wife, Julie M. Marquette. Trial court entered both orders under the Protection from Domestic Abuse Act, 22 O.S.Supp. 1983 § 60 *et seq.*[1]

Appellant and Appellee were divorced on September 10, 1982. Appellee was given custody of the parties' two young sons. On October 13, 1982, Appellee filed a petition for protective order.[2] She gave the following reasons for requesting the protective order:

> continued harassment & assault following the divorce granted Sept. 10, 1982. Throws children's clothes, shoes, toys, & children at me. Verbal threats are made to me in front of the children. I am afraid of being harmed as I have in the

---

1. The Act in its original form may be found at Laws 1982, c. 255. This Act was amended significantly in 1983. Disposition of this appeal will involve reference to both versions.

2. 22 O.S.Supp.1983 § 60.2 provides a sample petition. Tulsa County used this sample and provided it to Appellee. This form simplified the petitioning process since, for the most part, Appellee was able to check the appropriate box.

past. And afraid of emotional damage these scenes are doing to my children.

Appellee requested the court to enter an emergency ex parte order.[3] The court granted her request, and set a show cause hearing on November 1, 1982.[4] The ex parte order prohibited Appellant from abusing, injuring, visiting, communicating with, or threatening Appellee. It also instructed Appellant not to abuse or injure the minor children.

Appellant filed a demurrer and motion to dismiss on October 26, 1982. The hearing was passed by agreement from November 1 to November 3, 1982. On November 3, 1982, trial court modified the ex parte order to provide Appellant with specific visitation hours. Full hearing was again continued until November 19, 1982. On November 8, Appellant filed a motion to assume original jurisdiction and writ of prohibition in the Court of Criminal Appeals. The Court declined to assume original jurisdiction on November 16, 1982. Following trial on November 19, 1982, trial court entered a mutual protective order.[5]

We address the justiciability of this appeal as an initial matter. The ex parte order of October 13, 1982, expired at the trial on November 19, 1982. The protective order issued after the trial expired at the end of one year.[6] This protective order may be extended by the court upon motion, but we are unaware of any extension. Because Appellant is no longer subject to either order, appellate review will not afford him any additional relief. Oklahoma courts do not render judgment on abstract questions. *State ex rel. Commissioners of Land Office v. Cities Service Oil Co.*, 317 P.2d 722 (Okl.1957). The expiration of the orders renders the controversy moot, and therefore, nonjusticiable, unless it comes within an exception to the mootness doctrine.

Oklahoma recognizes two exceptions to the mootness doctrine: (1) when the appeal presents a question of broad public interest,[7] and (2) when the challenged event is "capable of repetition yet evading review."[8]

---

3. 22 O.S.Supp. 1983 § 60.2(B) (Petition for Protective Order):

5. (Check A or B)

(A) ☐ The victim is in immediate and present danger of abuse from the defendant and an emergency ex parte order is necessary to protect the victim from serious harm. The plaintiff requests the following relief in the emergency ex parte order: (check one or more)

☐ order the defendant not to abuse or injure the victim.

☐ order the defendant not to visit, assault, molest, harass or otherwise interfere with the victim.

☐ order the defendant not to threaten the victim.

☐ order the defendant to leave the residence located at _____ on or before _____

☐ _____
(describe other relief that plaintiff requests)

(B) ☐ The plaintiff does not request an emergency ex parte order.

4. The 1982 version required a hearing within 20 days. Laws 1982, c. 255 section 5(B). This was shortened to 10 days by the 1983 amendments. 22 O.S.Supp. 1983 § 60.4(B).

5. The Act does not specifically provide for such an order, nor was it requested by Appellant at

trial. However, since Appellee does not raise the question of its validity as to her, we will not consider it on appeal.

6. 22 O.S.Supp. 1983 § 60.4(E):

Any relief granted by the court may be for a fixed period not to exceed one (1) year. The court may extend any order, upon motion of either party, for such additional time as it deems necessary to protect the victim from domestic abuse. The court may modify its order at any subsequent time upon motion by either party or approve any consent agreement entered into by the plaintiff and defendant. No order issued under the Protection from Domestic Abuse Act shall in any manner affect title to real property.

7. *Cf. Peppers Refining Co. v. Corporation Commission*, 198 Okl. 451, 179 P.2d 899 (1947) (utilizing broad-public-interest exception to review expired order of Corporation Commission).

8. *See Lawrence v. Cleveland County Home Loan Authority*, 626 P.2d 314 (Okl.1981) (acknowledging, but not applying, the broad-public-interest and the likelihood-of-recurrence exceptions to the mootness doctrine); *see also Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432 (10th Cir.1978);

Domestic violence has wide-ranging ramifications [9] and can certainly be characterized as an issue of broad public interest. Further, under the ex parte order of October 13, 1982, Appellant was effectively denied his parental visitation since he could not communicate with his ex-wife, the custodial parent. This denial is likely to reoccur in future cases, yet evade review under ex parte orders. We find that both exceptions to the mootness doctrine can be invoked on Appellant's behalf.

Appellant urges the Act is criminal in nature, and he was entitled to the protections allowed in criminal proceedings. Specifically, he alleges trial court erred when it failed to impose on Appellee the "beyond a reasonable doubt" standard of proof at the November 19 trial. He relies on the codification and title of the Act to support his position. The Act is codified under Title 22 of the Oklahoma Statutes. Title 22 contains matters of criminal procedure. The title of the Act states it is "An Act Relating to Criminal Procedure."[10]

The Legislature is never presumed to have done a vain thing, *Farris v. Cannon*, 649 P.2d 529 (Okl.1982), however, a construction which would lead to an absurd result will be avoided provided it does not violate evident legislative intent. *Oklahoma Water Resources Bd. v. Franco-American Charolaise, Ltd.*, 646 P.2d 620 (Okl. App.1982).

In the absence of any legislative history, it is reasonable to assume the passage of the Act is a result of increased public awareness regarding the serious nature of domestic violence.[11] The Legislature has attempted to remedy this problem by providing immediate,[12] as well as long-range,[13] protection for the victims of domestic abuse.

We find the remedy provided is civil, not criminal, in nature for the following reasons. "A criminal action is one prosecuted by the State as a party, against a person charged with a public offense, for the punishment thereof."[14] "Every other action is a civil action."[15] The Act provides that the complaining party be the victim of the abuse, unless the victim is a minor or incompetent. In that event, an adult household member may petition on behalf of the minor or incompetent.[16] The State is not a party to this action, and the defendant is not charged with a public offense. We note that the opinion of the Attorney General is similar to our own.[17] In discussing a separate question, it stated:

> The act establishes a procedure to effect the protection of family or household members from domestic abuse. The only portion of the title which does not directly relate to the subject matter is the very first portion of the title which declares it to be "An Act Relating to Criminal Procedure;." However, it has been established that it is not fatal to a measure that the title be broader than the act itself.

The only "criminal" aspect of the Act is the penalty provision contained in § 60.6:

---

9. Taub, Ex Parte Proceedings in Domestic Violence Situations: Alternative Frameworks for Constitutional Scrutiny, 9 Hofstra L.Rev. 95 (1980); Note, The Battered Wife's Dilemma: To Kill or Be Killed, 32 Hastings L.J. 895 (1980).

10. 22 O.S.Supp. 1983 § 60.

11. *See, e.g.*, Note, Restraining Order Legislation For Battered Women: A Reassessment, 16 U.S. F.L.Rev. 703 (1982); Comment, Domestic Relations: Post-Marital Squabbles and the Harassing Ex-Spouse, 28 Ok.L.Rev. 404 (1975); See note 9, *supra*.

12. See note 3, *supra*.

13. See note 6, *supra*.

14. 12 O.S. 1981 § 7; 22 O.S. 1981 § 11.

15. 12 O.S. 1981 § 8.

16. 22 O.S.Supp. 1983 § 60.2(A):

A victim of domestic abuse, or any adult household member on behalf of any other family or household member who is a minor or incompetent, may seek relief under the provisions of this act by filing a petition for protective order with the district court of the county in which the victim resides.

17. 14 Okl.Op.A.G. 249 (1982).

**994**

Any person who has been served with an ex parte or final protective order and is in violation of such protective order, *upon conviction* shall be guilty of a misdemeanor and shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by a jail term of not more than one (1) year, or both. Ex parte and final protective orders shall include notice of these penalties. [Emphasis added.]

This penalty provision does not overshadow the substance of the Act. On the whole, this Act merely creates an additional framework through which the court may exercise its long recognized equitable power to grant restraining and injunctive orders in extraordinary circumstances. *Stovall v. Continental Federal Savings & Loan Ass'n.*, 635 P.2d 1336 (Okl.1981); *State Bar of Oklahoma v. Retail Credit Ass'n.*, 170 Okl. 246, 37 P.2d 954 (1935); *Nation v. Chism*, 154 Okl. 50, 6 P.2d 766 (1932). Trial court did not err when it used the "preponderance of the evidence" test at the November 19 trial.

■■■ Appellant contends trial court erred by overruling his demurrer to Appellee's petition for protective order. He alleges the language of the petition does not rise to the level of domestic abuse as defined by statute. The Act defines domestic abuse as: "a. causing or attempting to cause serious physical harm, or b. threatening another with imminent serious physical harm...." 22 O.S.Supp. 1983 § 60.1. When ruling on a general demurrer, the trial court accepts as true all facts well pleaded, together with all reasonable infer-

ences which may be drawn therefrom.[18] Appellee's petition alleged harassment, assault, throwing children, verbal threats, and fear of harm. "Serious bodily injury" has been defined as that which would "give rise to apprehension of danger to life, to health or limbs." *Hall v. State*, 309 P.2d 1096 (Okl.Crim.1957). We will not give a "blood and guts" interpretation to the requirement of "serious physical harm". We find the language of the petition was sufficient to withstand a general demurrer.

■■■ Appellant contends the petition was demurrable because it failed to establish a connection between the party named in the caption and the party referred to in the body of the petition. *Stovall v. Continental Federal Savings & Loan Ass'n.*, supra. This contention is without merit. The petition's caption identifies Jeff L. Marquette as defendant. The body of the petition states "defendant" is the ex-spouse of plaintiff/Appellee. The fact that the word "defendant" is part of the printed form and that Appellee is only required to insert the proper name for the defendant in the caption, does not render the petition demurrable.

■■■ Appellant also contends the Act constitutes an improper delegation of the legislative power to define a crime. Under the original version of the Act, the court could select an order from the list provided by the Legislature, or it could create its own.[19] Under the 1983 version, the court may not create an order. It may only choose from the list of orders provided by the Act.[20] We find Appellant's allegation

---

**18.** *White v. Wint*, 638 P.2d 1109 (Okl.1981).

**19.** 22 O.S.Supp. 1982 § 60.3, in pertinent part, reads:
An emergency ex parte order authorized by this section may include, *but shall not be limited to* the following: .... [Emphasis added.]
22 O.S.Supp. 1982 § 60.4(E), in pertinent part, reads:
Protective orders authorized by this section may include, *but shall not be limited to* the following: .... [Emphasis added.]

**20.** 22 O.S.Supp. 1983 § 60.3, in pertinent part, reads:

An emergency ex parte order authorized by this section may include the following:
1. An order to the defendant not to abuse or injure the victim;
2. An order to the defendant not to visit, assault, molest, harass or otherwise interfere with the victim;
3. An order to the defendant not to threaten the victim; or
4. An order to the defendant to leave the residence.
22 O.S.Supp. 1983 § 60.4(D):
Protective orders authorized by this section may include the following:

of error non-justiciable. First, we have determined the act to be civil in nature. Second, Appellant was not subjected to a court-created protective order. The trial court selected from among the list provided by the Legislature, and Appellant has no standing to complain about what the trial court might have done. We will not express an opinion on abstract questions which do not arise on existing facts. *In re Fletcher's Estate*, 308 P.2d 304 (Okl.1957). Third, under the present language of the Act, the court makes the limited determination of whether any or all of the orders provided by the Legislature are appropriate.[21] There is no longer the possibility of any defendant being subjected to a court-created order under the Act.

■ Appellant next contends the language of the ex parte order did not comply with the statute. As a result, he argues the court operated outside its authority and lacked proper jurisdiction. Section 60.4(B) of the 1982 version stated:

If the court issues an emergency ex parte order, such order shall provide that *instead of performing thereunder*, the defendant may appear on a date certain, not more than twenty (20) days thereafter, and show good cause as to why he should not comply with said order. [Emphasis added.]

The last paragraph of the ex parte order reads as follows:

YOU, THE DEFENDANT, ARE ORDERED TO APPEAR BEFORE THE Honorable Deborah C. Shallcross, Special Judge of the District Court in and for Tulsa County, State of Oklahoma, on the 1 day of November, 1982, at 9:00 o'clock a.m. in Courtroom 378 in the Tulsa County Courthouse, 500 S. Denver to show cause why you should not comply with the order of this Court.

Appellant alleges the ex parte order should have instructed him that he had the *option* of obeying the order *or* not obeying the order. Because the order lacked this instruction, and purported to be immediately effective, the court was acting beyond the power given it by the statute. Appellant's interpretation of the phrase "instead of performing thereunder" renders the ex parte order provisions useless, and strikes at the heart of what the Legislature intended to accomplish by the Act—protection from domestic violence. The 1983 amendments significantly altered this subsection.[22] The expiration of the ex parte order and the amendment of the section render this issue moot.

■ Appellant's final assertion of error alleges denial of due process under the October 13 ex parte order. The due process guarantee is intended to protect an individual against arbitrary acts of the government. Appellant was effectively denied his right to visit his children from October 13 until November 3. This occurred because he could not communicate with his ex-wife, the custodial parent.

This interference with Appellant's visitation rights is significant. Appellant alleges this right has been violated without procedural due process. We do not take the interference with parental visitation lightly, but we note that such interference can only occur for a total of ten days prior to the deprived parent receiving a full hearing. This infringement must be balanced against the government's interest in issu-

---

21. An order to the defendant not to abuse or injure the victim;
2. An order to the defendant not to visit, assault, molest, harass or otherwise interfere with the victim;
3. An order to the defendant not to threaten the victim;
4. An order to the defendant to leave the residence;
5. An order awarding attorney fees; and
6. An order awarding court costs.

21. *Cf. State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 234–5 (Mo.banc 1982) (upheld dele-

gation to court to select orders from among choices created by Missouri's Legislature where language is identical to Oklahoma's 1983 version).

22. 22 O.S.Supp. 1983 § 60.4(B):
Within ten (10) days of the filing of the petition the court shall schedule a full hearing on the petition, regardless of whether an emergency ex parte order has been previously issued, requested or denied.

ing the order and the risk of erroneous deprivation under existing procedures.[23]

The State's interest in providing this protection to the victims of domestic abuse is apparent. The legislation promotes the health, safety and general welfare of its citizens. Domestic violence has become a problem of considerable magnitude.

The consequences of allowing battering to continue can be serious. Experts believe that domestic violence is likely to escalate in cyclical fashion, at times resulting in the woman's death. Women caught in the cycle of abuse may, in the process of defending themselves, kill their assailant. Children exposed to such patterns of violence not only may suffer immediate emotional distress, but also may reproduce their parents' behavior patterns as adults.[24]

Temporary restraining orders issued without notice have survived constitutional attack. *See, e.g. United States v. Spilotro,* 680 F.2d 612 (9th Cir.1982); *State v. B Bar Enterprises, Inc.,* 133 Ariz. 99, 649 P.2d 978 (Ariz.1982). The Act provides the following procedures prior to issuance of the ex parte order. An ex parte order is not issued unless good cause is shown by petitioner at a hearing held by the court. Only then may the court issue such order as is necessary to protect the victim from immediate and present danger of domestic abuse.[25] Under the 1983 version of the Act, a hearing must be held within ten days after the petition is filed regardless of whether an ex parte order has been issued.[26] Although there is always some chance of erroneous deprivation, the trial court will have opportunity to judge the credibility of the petitioner prior to issuing the order. The court may be able to see first hand the evidence of domestic violence.

Carefully considering all the above factors, we find the procedural safeguards employed under the Act prior to the issuance of an ex parte order, coupled with the state's interest in securing immediate protection for abused victims, of sufficient weight to meet Appellant's due process challenge.

■ Allegations of error not raised in Petition in Error will not be addressed on appeal. *Barber v. Flynn,* 628 P.2d 1151 (Okl.1981); *Martin v. Harrah Ind. School Dist.,* 543 P.2d 1370 (Okl.1976).

We hold the trial court properly exercised its authority under the Act.

AFFIRMED.

YOUNG, P.J., and ROBINSON, J., concur.

---

**23.** *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *State ex rel. Williams v. Marsh, supra* note 21; *See also* Taub, *supra* note 9, at 107.

**24.** Taub, *supra,* note 9, p. 96 (footnotes omitted); *see also* note 11, *supra.*

**25.** 22 O.S.Supp. 1983 § 60.3:

**26.** See note 22, *supra.*

If a plaintiff requests an emergency ex parte order pursuant to Section 60.2 of this title, the court shall hold an ex parte hearing on the same day the petition is filed. The court may, for good cause shown at the hearing, issue any emergency ex parte order that it finds necessary to protect the victim from immediate and present danger of domestic abuse.