**Perry KLUVER and Linda Kluver, individually and as parents and next friends of Brandon Kluver, Appellants,**

v.

**WEATHERFORD HOSPITAL AUTHORITY dba Southwestern Memorial Hospital, Appellee.**

No. 64458.

Supreme Court of Oklahoma.

June 22, 1993.

Rehearing Denied Oct. 12, 1993.

**1082**

Linn & Helms by William J. Skepnek, Libby Hougland, James W. Morris III, William R. Burkett, Oklahoma City, for appellants.

Foliart, Huff, Ottaway & Caldwell by G. Scott Ray, Oklahoma City, for appellee.

HODGES, Chief Justice.

The dispositive issue in this appeal of a medical malpractice action is whether the trial court erred in granting summary judgment to the defendant, Weatherford Hospital Authority doing business as Southwestern Memorial Hospital (the hospital). Summary judgment was based on the plaintiffs' failure to comply with the Political Subdivision Tort Claims Act (Act), Okla.Stat. tit. 51, §§ 151–170 (1981) (now the Governmental Tort Claims Act, Okla.Stat. tit. 51, §§ 151–172 (1991)). Evidence of whether the hospital was a true political subdivision entitled to the protection of the Act's notice provision was not presented to the trial court. The judgment must therefore be reversed and the cause remanded for such a determination.

This action was brought by Perry and Linda Kluver (the Kluvers), appellants. On October 19, 1981, the Kluvers' son Brandon, was born at the hospital in Weatherford, Oklahoma. Shortly after his birth, Brandon began experiencing difficulty in breathing. The following morning he was transferred to Childrens' Hospital in Oklahoma City where doctors determined he might have brain damage resulting from a lack of oxygen during the delivery.

According to Mrs. Kluver's deposition testimony, the physicians at Childrens' Hospital informed the Kluvers of the child's injury "within the first week" of his stay there. They also told Mrs. Kluver that Brandon "had gone without oxygen" for some time and that "it had occurred sometime during birth or after birth." Mr. Kluver testified on deposition that the physicians met with him and his wife "within just a few days of" Brandon being taken to Childrens' Hospital to view CAT scan results which showed damage to Brandon's brain.

Due to the brain damage, the physicians were concerned that Brandon might experience seizures. Consequently, he was placed on seizure medication for the first year of his life. Brandon experienced no seizures until June of 1983, when he was found in a catatonic state. This occurred approximately eight months after Bran-

don's doctors at Childrens' Hospital took him off the seizure medication. The Kluvers again took Brandon to Childrens' Hospital where physicians were of the opinion his condition was the result of the initial birth trauma.

Two months after Brandon's seizure, the Kluvers sent a letter to the hospital's president concerning Brandon's condition and a malpractice action was filed one month later. After extensive discovery, the hospital moved for summary judgment arguing that (1) it qualified as a political subdivision as that term was defined in section 152(6)(d) of the Act, (2) the Act's notice provisions therefore applied to the case, (3) the Kluvers failed to comply with the notice provisions of the Act, and (4) this non-compliance barred the Kluvers' right to bring an action against the hospital. The trial court agreed and granted summary judgment to the hospital. From this judgment, the Kluvers have appealed.

The Kluvers argue that the Act does not apply in this case because the hospital does not qualify as a political subdivision. They point to a 1984 amendment to section 152(6)(d) which changed the definition of "political subdivision" so that it now exempts hospitals operating under a public trust from the Act's coverage. They seek retroactive application of the amendment to this case. However, the amendment became effective on October 1, 1985, long after this action was filed. *See* 1984 Okla. Sess. Laws 826.

■ Statutes are generally presumed to operate prospectively. *Wickham v. Gulf Oil Corp.*, 623 P.2d 613, 615 (Okl. 1981). This presumption is rebutted only where "the purposes and intention of the Legislature to give a retrospective effect are expressly declared or are necessarily implied from the language used." *Id. See also: Hammons v. Muskogee Medical Center Authority*, 697 P.2d 539, 542 (Okl. 1985). No language in the amendment declares or implies an intent for retroactive application. But this does not necessarily mean that the hospital was a public trust. Two cases from this Court were decided after the trial court's decision and after the

briefs of the parties were filed in this appeal. Both cases directly impact the issue of whether the hospital was a political subdivision in 1981.

■ In *Roberts v. South Oklahoma City Hospital Trust*, 742 P.2d 1077 (Okl. 1986), and *Fowler v. Norman Municipal Hospital*, 810 P.2d 822 (Okl.1991), this Court determined whether certain hospitals were public trusts making them political subdivisions. In both cases, the injury occurred before the 1984 amendment to the Act which excluded "any hospital operating under a trust authority" from the definition of "political subdivision." Okla.Stat. tit. 51, § 152(8)(d) (Supp.1984). Each case found that the defendant hospital's trust agreement was illusory and merely provided a method of financing the construction of a health care facility. Therefore, the hospital was not a true political subdivision. *Roberts*, 742 P.2d at 1082; *Fowler*, 810 P.2d at 824–25.

*Roberts* articulated a list of factors which lead to the conclusion that the hospital was not a political subdivision for purposes of the Act. These factors were recited and applied in *Fowler*. They include the following:

(1) the hospital was managed by South Oklahoma City Hospital Management Corporation; (2) the bank account used by the management corporation was in the name of South Community Hospital; (3) business was conducted in the name of South Community Hospital; (4) the city did not approve hospital rules and regulations, staffing decisions, or day-to-day operations; (5) the hospital promoted a private image in its day-to-day operations; (6) fund drives were held in the hospital's name; (7) the hospital chose its own insurance carrier; (8) there was no direct benefit to the city; (9) the hospital did not receive money from the city; (10) the hospital did not deposit any money into the city treasury; and (11) the hospital operated as a private business without interference by or accountability to the city. The trust agreement was merely a "method of financing the construc-

tion of the hospital." The hospital simply did not put patients on notice that it purported to be a political subdivision. *Fowler*, 810 P.2d at 824. These factors were not considered in the present case because the trial court was not afforded an opportunity to consider these factors from *Roberts* and *Fowler* which were articulated after this case was pending before this Court.

This case was fully briefed and at issue before this Court prior to the decision in *Roberts*. It was one of several medical malpractice cases brought against South Community and other hospitals. *See Chapman v. Pawnee Mun. Hosp.*, No. 66,-182 (Apr. 18, 1989); *Cox v. South Community Hosp.*, No. 65,729 (Feb. 21, 1989); *Gibbs v. South Community Hosp.*, No. 65,061 (Feb. 21, 1989); *Gurley v. Memorial Hosp.*, 770 P.2d 573 (Okl.1989); *Williams v. Stout*, No. 63,888 (Feb. 21, 1989). *Roberts* was the only case that decided the "true public trust" issue in published form. The other cases applied *Roberts* but were not published.

All these cases were filed while *Roberts* was awaiting this Court's decision. In the four cases brought against South Community Hospital, summary judgment in favor of the hospital was reversed and the plaintiffs prevailed on that issue. In the two cases brought against other hospitals, the matters were remanded to the trial court for the introduction of evidence on the issue.

None of these cases specifically raised the "true public trust" argument raised in *Roberts*. Nevertheless each case received the benefit of *Robert's* new rule. Nothing about the case presently before this Court warrants a different result.

■ This controversy presents a question of law concerning the hospital's status as a true public trust under *Roberts*. Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). If a rule of law is applied to one litigant, then it should apply to other litigants similarly situated. *James B. Beam Distilling Co. v. Georgia*, — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (opinion per Souter, J., joined by Stevens, J.; opinion per White, J., concurring in judgment; opinion per Blackmun, J., joined by Marshall and Scalia, JJ., concurring in judgment). This Court has the authority to review the issue and the Kluvers are entitled to have the issue reviewed by this Court.

Unfortunately, no evidence has been taken on the question. This case must be remanded to the trial court for a determination concerning this material fact. If the evidence demonstrates that the hospital was not a true political subdivision for purposes of the Act, plaintiffs must be afforded the benefit of the two-year statute of limitations under which the action was timely filed.

**JUDGMENT REVERSED AND CAUSE REMANDED WITH INSTRUCTIONS.**

ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., concurs by reason of stare decisis.

OPALA, J., concurs in part, dissents in part.

LAVENDER, V.C.J., and SIMMS and HARGRAVE, JJ., dissent.

SIMMS, Justice, dissenting:

Today the majority extends its judicial review to decide an issue which is not before the Court. Although I agree with the Court's conclusion that the 1984 amendment to 51 O.S.1981, § 152(6)(d) must be given prospective effect, I must respectfully dissent from the majority's *sua sponte* decision to remand the matter for the trial court to determine whether the Hospital is a public trust because the Kluvers have waived review of the issue.

The majority claims the trial court never had an opportunity to determine whether the Hospital was a public trust. Why?

Because the issue was never raised by the parties in the trial court.

From the early stages of the litigation, the Kluvers treated the Hospital as a political subdivision. In the First Amended Petition and Second Amended Petition, the Kluvers allege that "defendant Weatherford Hospital Authority d/b/a Southwestern Memorial Hospital (hereinafter the 'Hospital') is a public trust of the City of Weatherford established to fund and operate a hospital located in Custer County, Oklahoma." They further asserted on numerous occasions that the letter they sent to the president of the hospital prior to filing suit was a claim "notice" as required by 51 O.S.1981, § 156(B) of Oklahoma's Political Subdivision Tort Claims Act. In its Motion for Summary Judgment, the Hospital stated that it was uncontroverted that it was a public trust of the City of Weatherford. Moreover, in an affidavit attached to the motion, Ronnie Walker, the president of the Hospital, stated that the Hospital was created by the Weatherford Hospital Authority and is operated as a public trust. The Kluvers did not refute either of these factual statements in their response.

The majority opinion states that "[u]nfortunately, no evidence has been [was] taken on the question." It is evident why no evidence was taken; the Kluvers admitted that the hospital was a public trust.

Not only did the Kluvers fail to present any evidence to discredit the Hospital's facts, but they also made no effort to argue that the Hospital did not meet the definition of a public trust under the Act. Other than their assertion that the 1984 amendment to § 152(6)(d) should apply retroactively, the Kluvers made no attempt to prove that the Hospital was not a political subdivision under the Act. Indeed, the fact that they argued for retroactive application of the amendment, which specifically excludes hospitals operating under a trust authority from being considered a public trust, indicates that they otherwise agreed that the Hospital was a public trust.

After reviewing the briefs and pleadings, considering the evidence, which included "depositions, affidavits, answers to interrogatories, and other matters of record," and hearing arguments of counsel, the trial court granted the Hospital's summary judgment. The Order and Judgment stated:

"IT IS THE FINDING OF THE COURT that said defendant's motion for summary judgment should be and hereby is sustained upon the grounds that the plaintiffs have failed to comply with the requirements of the Oklahoma Political Subdivision Tort Claims Act, and plaintiffs' claim against said defendant is therefore barred."

Implicit in this ruling is an adjudication that the Hospital is, in fact and law, a political subdivision covered by the Act. Without such a finding, the court could not have determined that the notice requirements of the Act applied. In their Petition in Error, the Kluvers do not assert error in the trial court's inferred finding that the Hospital is a public trust, and therefore, a political subdivision under the Act. Neither do they argue such issue in their briefs. In fact, at page 31 of their brief in chief, the Kluvers state unequivocally that Hospital is a public trust. Their brief reads:

"The Hospital is a public trust, and its beneficiary is the City of Weatherford, Oklahoma (First Amended Petition). Under this definition then [referring to 51 O.S.1979, § 152(6)], the Hospital would presumably fall within the terms of the Act."

Thus, throughout the litigation and this appeal, both parties have assumed that the Hospital, as a public trust, is a political subdivision and covered by the Act. Their arguments have centered on how the Act should apply in this case, and the issue has never been raised until now. This Court has no business raising the issue for the Kluvers at this late stage in the litigation, nor should we address the issue which was neither presented to the trial court nor raised on appeal.

This is all the more important because the issue of whether a hospital operating as a public trust is a political subdivision

was properly raised in both cases cited by the majority, *Roberts v. South Oklahoma City Hospital Trust,* 742 P.2d 1077 (Okl. 1986) and *Fowler v. Norman Municipal Hospital,* 810 P.2d 822 (Okl.1991). Indeed, the dispositive and focal issue in *Roberts* was whether South Community Hospital Trust d/b/a South Community Hospital was actually a public trust covered by the Act. We found the trust to be illusory and denied statutory immunity to it under the Act. The plaintiff in *Roberts* initially raised the issue and argued it successfully, whereas the Kluvers have failed to even mention it in the case at bar. Following promulgation of *Roberts,* neither party has made even a hint or a suggestion as to why or how *Roberts* is applicable to this case.

The plaintiff in *Fowler* argued both to the trial court and this Court that Norman Municipal Hospital was not a political subdivision under the Act. Relying on *Roberts,* we reversed the trial court's summary judgment for the hospital, holding that it was not a political subdivision. However, like *Roberts,* our holding in *Fowler* does not apply in the case at bar because the issue of the hospital's status in *Fowler* was raised at the trial court level and on appeal. Thus, the majority's conclusion that we must remand this case for a factual determination is erroneously grounded on cases where the issue was properly before the Court. The matter before us is not such a case.

In addition, even if a factual determination of status as a public trust/political subdivision was necessary in this case, the record indicates sufficient facts for the trial court to have decided the issue. Again I note that the Kluvers wholly failed to refute the Hospital's contention and supporting evidence that it was a public trust. Where the Kluvers have had an opportunity to present evidence on the issue and failed to produce anything, we should not send the matter back to the trial court for "overs."

Finally, the majority mistakenly concludes that *Roberts* established a standard list of factors to look for in determining whether a hospital is truly a public trust.

In *Roberts,* the Court recited the relevant evidence which indicated that South Community Hospital was merely an illusory trust. Although *Roberts* provides an excellent example of proper analysis of the issue in an appropriate case, it does not establish a standard to be used in making the determination, nor does it mandate trial courts or this Court to *sua sponte* address the issue where the plaintiff fails to raise it.

In an effort to justify its *sua sponte* decision to raise the issue of Hospital's status and remand for a determination, the majority cites several cases which came after *Roberts,* supra. However, none of these cases support the majority's position.

First, *Chapman v. Pawnee Municipal Hospital,* No. 66,182 (Okla. April 18, 1989), was an unpublished opinion which began by noting that:

> "[t]he dispositive issue *presented by the appellant, Leta Mae Chapman (Chapman),* is whether the appellant, Pawnee Municipal Hospital (Hospital), is a valid public trust within the purview of the Political Subdivision Tort Clams Act (Act), 51 O.S.Supp.1979 § 151, et seq." (Emphasis added)

Incidentally, in *Chapman,* the paperwork disclosed it was a true public trust and a one cent sales tax had been imposed on the citizens of Pawnee to fiscally support the hospital *qua* public trust.

In both *Cox v. South Community Hosp.,* No. 65,729 (Feb. 21, 1989) and *Gibbs v. South Community Hosp.,* No. 65,061 (Feb. 21, 1989), this Court was aware of the nature of South Community Hospital's claim to be a public trust. *Roberts* had considered the question as to South Community Hospital's status under the act and determined it to be an illusory trust. This Court being aware of the illusory nature of the hospital's claim, we naturally remanded the *Cox* and *Gibb* cases pursuant to our decision in *Roberts.*

For the same reason, *Williams v. Stout,* (No. 63,888) (Feb. 21, 1989), was also remanded pursuant to *Roberts.* South Community Hospital was a party to the case, and the appellant, Williams, argued that

South Community Hospital was not a public trust under the Governmental Tort Claims Act.

As for *Gurley v. Memorial Hospital of Guymon,* 770 P.2d 573 (Okl.1989), the question presented to this Court was whether the purchase of liability insurance by the hospital abrogated the need to provide notice of claim under the Act. The only language in the opinion which even remotely hints at the issue of the hospital's status as a public trust is found in footnote 3 which follows:

> "³ The record contains an affidavit of the hospital administrator averring that the Hospital is owned and operated by Texas County through its Board of Control. Gurley does not question the Hospital's status as a political subdivision, nor does the record reveal any facts to support such an allegation. See, *Roberts v. South Oklahoma City Hosp. Trust,* 742 P.2d 1077, 1079 (Okla.1986)." (Emphasis mine)

Contrary to the majority opinion, this footnote does not indicate that the Court should raise the issue for the parties. Thus, neither of the cases cited by the majority support its decision to remand this cause for determination of an issue which the majority is raising for the first time.

The majority further holds that this controversy presents a question of law which the Court may review by a *de novo* standard on the grounds that an appellate court has "plenary independent and non-deferential authority to reexamine a trial court's legal rulings," citing *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). What the majority fails to note is that the holding in this case was directed to the federal Circuit Courts of Appeal in reviewing a federal district court's determination of state law. Moreover, the plenary appellate authority discussed is derived from a federal statute. This rule of law does not apply here.

The majority also relies upon *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), for the proposition that "[i]f a rule of law is applied to one litigant, then it should apply to other litigants similarly situated." I first note that the opinion rendered did not have a majority of votes but rather was a plurality opinion (Opinion by Souter, J., and joined in by Stevens, J.). Moreover, the full holding in the plurality opinion was that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others *not barred by procedural requirements* or res judicata." At ——, 111 S.Ct. at 2448. (Emphasis added) Surely, raising an issue in the Petition in Error for this Court to address would be a sufficient procedural requirement to negate the rule in this case. *See* Rule 1.16 of the Rules of Appellate Procedure in Civil Cases, 12 O.S.1991, Ch. 15, App. 2, which has the force of statute. 12 O.S.1991, § 990A.

Even if the rule of law set forth in *James B. Beam Distilling Co. v. Georgia* was applicable in the case at bar, it would have no effect because, as shown above, the litigants in the instant case are not similarly situated as the litigants in either of the cases upon which the majority relies.

I note that there may be some question as to whether the issue decided by the majority is one of fact, one of law or a mixed question of law and fact. The majority seems to treat it as one of fact. Nevertheless, if the issue is one of fact, then the Kluvers have confessed it by alleging it in their pleadings and assuming it in their arguments. If the issue is one of law, then the Kluvers have waived it by failing to assert it before the trial court and upon appeal. Either way, this Court should not take an adversarial stance and raise issues which at this time are totally foreign to the case.

Nor can this Court say this case was in the "pipeline", i.e., governed by the ruling in *Roberts* and its progeny. As hereinbefore set forth, the issues in this case and *Roberts* are entirely different. This Court, and only this Court, attempts to make the issues related.

I would affirm the trial court's judgment in favor of the Hospital.

I am authorized to state that Vice Chief Justice LAVENDER and Justice HARGRAVE join with me in the views expressed above.