2008 OK CIV APP 27

**Luanne Johnson TRIPLETT on behalf of K.T., Plaintiff/Appellee,**

v.

**Viktor Alex MILLER, a/k/a Dewy, Defendant/Appellant.**

**No. 104,055.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 8, 2008.

Randal D. Morley, Birmingham, Morley, Weatherford & Priore, P.A., Tulsa, OK, for Plaintiff/Appellee.

Kurt G. Glassco, McCollam & Glassco, P.A., Tulsa, OK, for Defendant/Appellant.

BAY MITCHELL, Vice–Chief Judge.

¶ 1 Defendant/Appellant, Viktor Alex Miller (Miller), appeals from the entry of a final protective order in favor of Plaintiff/Appellee, K.T. Triplett (Triplett), against him. Luanne Triplett, on behalf of her daughter K.T., filed a Petition for a Protective Order on October 18, 2006 against Miller. Triplett alleged Miller had stalked and harassed her from December 2005 through October 2006 at school and at football games, and had sent a vulgar picture to her cell phone. Following a hearing on November 6, 2006, the court entered the final order prohibiting Miller from having any contact with Triplett for a period of three years.

¶ 2 Miller contends the evidence introduced at trial was insufficient to show that he either stalked or harassed Triplett. Further, he contends the trial court failed to act as a fair and impartial tribunal, because the court allowed a witness to stay in the courtroom after testifying, admitted hearsay testimony, and personally questioned the witnesses. Finally, Miller contends the court abused its discretion by refusing to allow a continuance. Alternatively, Miller argues the court abused its discretion by imposing the maximum three-year protective order. After carefully reviewing the entire record, we affirm.

¶ 3 The trial court's decision to enter a protective order will not be reversed absent an abuse of discretion. *Watts v. Hensley,*

2000 OK CIV APP 41, ¶ 5, 4 P.3d 45, 46.[1] "Where there is conflicting evidence on an issue of fact, we defer to the judgment of the trial court who is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility." *Been v. Been,* 2007 OK CIV APP 31, ¶ 9, 158 P.3d 491, 493; *In re Estate of Holcomb,* 2002 OK 90, ¶ 8, 63 P.3d 9, 13.

██ ¶ 4 Protective orders are governed by the Protection from Domestic Abuse Act. 22 O.S. 60.1 et. seq. The Act provides that a victim of domestic abuse, stalking, harassment, or rape, or a member of the household on behalf of a minor, may seek relief under the Act. 22 O.S. Supp.2003 60.2(A). Triplett alleged Miller had harassed and stalked her. "Harassment" is defined under the Act as follows:

> ... *a knowing and willful course or pattern of conduct* by ... an individual who is or has been involved in a dating relationship with the person, directed at a specific person *which seriously alarms or annoys the person, and which serves no legitimate purpose.* The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial distress to the person. "Harassment" shall include, but not be limited to, harassing or obscene telephone calls ... and fear of death or bodily injury;

22 O.S. Supp.2005 60.1(3) (emphasis added). "Stalking" means the "willful, malicious, and *repeated following* of a person by an adult, emancipated minor, or minor thirteen (13) years of age or older, with the intent of placing the person in reasonable fear of death or great bodily injury." § 60.1(2) (emphasis added).

¶ 5 The trial court conducted a hearing and received testimony from Miller and Triplett, as well as from several other witnesses. The evidence disclosed that Miller and Triplett were both minors who attended the same school. At the time of the hearing, Miller was a sophomore and Triplett was a freshman. From approximately December 2005 to March 2006, they were friends and spoke frequently at school and on the telephone. They also sent each other numerous "sexually explicit" text messages. In one of Miller's text messages, he sent a picture of his naked penis to Triplett. Triplett testified that Miller had "initiated sexual contact" a couple of times, but he stopped when she asked him to stop.

¶ 6 Triplett's parents found out about the text messages in February 2006. The parents of both minors felt the relationship was inappropriate and they told the minors to stop seeing each other. Apparently, though, none of the parents knew about the picture that Miller had sent to Triplett. Triplett and Miller both testified they had no contact with each other after approximately March of 2006 until school began again that fall.

¶ 7 When school started in August of 2006, Triplett and Miller were initially on friendly terms. Miller testified that he soon began hearing gossip that he had taken advantage of Triplett. Miller admitted that he lost his temper on September 15, 2006 at a football

---

1. We note a discrepancy among published Court of Civil Appeals opinions regarding the applicable standard of review. Two recent Court of Civil Appeals opinions applied a *de novo* standard to the *factual question* of whether the evidence presented at trial supported granting a protective order. In *Troutman v. Martin,* 2005 OK CIV APP 51, ¶ 5, 118 P.3d 233, 235, the issue was whether there was sufficient evidence of stalking to enter protective order; *see also Snyder v. Standifer,* 2007 OK CIV APP 76, ¶ 5, 168 P.3d 240, 242 (issue was whether there was sufficient evidence that father had harassed daughter and her family to support protective order). As authority for applying the *de novo* standard, both cases cited to *Spielmann v. Hayes,* 2000 OK CIV APP 44, 3 P.3d 711. The first issue in *Spielmann* was a question of law regarding whether a teacher had standing under the Act to seek a protective order when a threat was made against her

husband. *Id.,* ¶ 10, 3 P.3d at 713. Thus, the court's statement therein that the application of the facts to the statute was an issue of law subject to *de novo* review was correct. *See id.,* ¶ 7, 3 P.3d at 713. However, the second issue in the case was whether the facts supported the court's conclusion that the teacher had been harassed, *i.e.,* the sufficiency of the evidence. *Id.,* ¶ 14, 3 P.3d at 714. The court failed to identify or apply the different standard of review for this factual issue-abuse of discretion. This failure to distinguish between the legal question of standing and the factual question of sufficiency of the evidence was then carried into the two later opinions, *Troutman* and *Snyder,* which, citing *Spielmann,* merely applied the *de novo* standard of review without analysis. This is an incorrect standard of review for factual questions, and we instead apply the abuse of discretion standard. *Watts,* ¶ 5, 4 P.3d at 46.

game, and yelled a derogatory and profane comment at Triplett. Triplett testified that she was very upset and broke into tears. Her father saw her and threatened Miller to stay away from his daughter. Miller stated he tried to apologize, but Triplett would not let him. Triplett testified that Miller tried to call her at least twice the next morning.

¶ 8 A few days later, someone wrote on Triplett's locker "I still care" with a heart in a permanent marker. Miller denied that he actually wrote on the locker, but admitted that he was "a part of it." Triplett stated Miller then began following her around at school trying to get her attention, and even kicked her in the rear on one occasion. One of Triplett's friends testified that Miller told him he was going to call Triplett derogatory names anytime he saw her. Another friend testified that Miller stated "I hate that bitch." Miller even admitted that he told a group of his friends that she was a "slut."

¶ 9 At this point, Triplett testified she was always very upset. She spoke to her sister about what was going on at school and told her about the text messages and the picture Miller had sent her several months prior. Her sister spoke to a police officer, who told them they could file a protective order.

¶ 10 Because the sexually explicit picture violated the school's student code, Miller was suspended on October 13, 2006. However, he was still allowed to play in the football game. Triplett stated that when Miller saw her, he pretended to shoot himself in the head. Miller also had an argument with his mother, and threw down his helmet and cursed. Triplett testified that Miller's mother then followed her and tried to take pictures of her. Triplett testified she was very scared, and left the game.

¶ 11 Miller was later expelled for the picture and for cursing at the game. After he was expelled, he wrote on his "My Space" page on the internet that Triplett was at fault for getting him expelled. He asked his friends if they were going to "give [K.T.] a lot of shit for this." Triplett testified that she was afraid and stressed by this time, and just wanted the problems to end.

¶ 12 The police officer who investigated these incidents testified that there was also a later allegation that Miller made a threat to use a gun on himself or other students at the school. Another student testified that there was a "rumor" Miller had threatened to harm himself or his classmates with a gun. The officer did not have any additional evidence other than the allegation.

¶ 13 The trial court did not abuse its discretion by entering a protective order based on this evidence of harassment. The evidence reveals a young man who used a general pattern of intimidation, yelling, and cursing to harass Triplett for approximately one month. Several witnesses testified as to Triplett's increasing emotional distress during this time. Miller's behavior served no legitimate purpose. The evidence shows it seriously alarmed and annoyed Triplett and likely would have done so to any reasonable person. Although some of the evidence was conflicting, the trial court was in the best position to judge the credibility of the witnesses and their testimony.

¶ 14 The trial court did not abuse its discretion by entering a three-year protective order. Miller has shown very little capability of controlling his emotions, as was shown by his reaction to getting expelled. Miller argues that a shorter time frame would suffice because he was expelled and lives in a different town and would not come into contact with Triplett. Miller, however, was only expelled for one year and potentially could return the following year. We find no abuse of discretion in entering the protective order for the remainder of Triplett's high school years so she can attend high school without the threat of further harassment.

¶ 15 Miller also contends the court did not act as an impartial tribunal during the hearing for several reasons. First, the court allowed Officer Tuell, a witness for the Tripletts, to remain in the courtroom to provide reassurance to the Tripletts after he had testified. Miller, however, did not object to the officer remaining in the courtroom and we find no plain error. *McMillan v. Lane Wood Co.*, 1961 OK 95, ¶ 9, 361 P.2d 487, 490 (duty of appealing party to call alleged error to trial court's attention so court has opportunity to correct error, or alleged error is not reviewable).

¶ 16 Miller contends the court erred by admitting testimony of the text messages

and by relying on the picture Miller sent Triplett, but not allowing him to show the sexual text messages Triplett sent back to Miller. He alleges the court erred in refusing to grant a continuance so he could obtain those text messages he and Triplett exchanged to show their relationship was consensual.

¶ 17 The question of whether to grant a continuance is within the sound discretion of the trial court, and the refusal to grant one is not reversible error unless an abuse of discretion is shown. *Matter of Estate of Katschor*, 1975 OK 159, ¶ 7, 543 P.2d 560, 562. The court had already granted one continuance requested by Miller's attorney. The witnesses were all present and ready to proceed. Further, Triplett admitted that she had sent improper messages. In addition, it was Miller's actions after school began in the fall after the relationship had ended that was the basis for the protective order. Even if Miller had been able to obtain and admit the evidence of Triplett's text messages to him, it would not have excused Miller's actions after they had broken up. There was no abuse of discretion in denying a second continuance.

¶ 18 Miller also takes issue with the trial court asking questions of Triplett's witnesses, and allowing Triplett and her mother to interrupt witnesses. The Tripletts were not represented at the hearing and the trial court likely allowed them some latitude. While the trial court might have maintained better control of its courtroom, this did not create an unfair trial, and Miller never objected. We find no evidence of partiality by the trial court. The court asked questions of both parties and most of their witnesses, and did not show bias toward either party. *See Allen v. State*, 1993 OK CR 49, ¶ 14, 862 P.2d 487, 489.

¶ 19 Finally, Miller complains the court admitted numerous hearsay statements. However, Miller did not object to any specific hearsay statement, and any objection is therefore waived. *Young v. State*, 2000 OK CR 17, ¶ 49, 12 P.3d 20, 37 (failure to object at trial on the grounds raised on appeal waives review of all but plain error). The only objection Miller raised was to the admission of a six-page statement by Triplett, which Miller objected to on the vague ground that it "doesn't comply with the rules of evidence even slightly," and on the basis that it was not relevant. The court admitted the statement, and stated it would disregard any irrelevant evidence therein. Triplett then testified to most of the same evidence without objection from Miller as to hearsay. We find no reversible error.

¶ 20 AFFIRMED.

BELL, J., concurs, and BUETTNER, P.J., concurs in result.