2014 OK CIV APP 12

**Lynn Z. NULL, Plaintiff/Appellee,**

v.

**Robin A. POLIN, Defendant/Appellant.**

**No. 110,468.**

Court of Civil Appeals of Oklahoma,
Division No. 4.

Aug. 20, 2013.

Rehearing Denied Oct. 21, 2013.

Leslie K. Brier, Brier Law Firm, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellee.

Donald B. Bolt, III, Bolt Law Firm, Tulsa, Oklahoma, for Defendant/Appellant.

KEITH RAPP, Judge.

¶ 1 Defendant, Robin A. Polin, appeals the trial court's Final Order of Protection finding plaintiff, Lynn Null, was a victim of stalking as defined in Title 22 O.S.2011, § 60.1(2) and granting an Order of Protection against Polin for three years.

## BACKGROUND

¶ 2 Null is employed as an independent living coordinator for Tulsa Source for Hearing–Loss and Access (TSHA), a non-profit agency that provides services to the deaf and hard-of-hearing communities. She is also the liaison between TSHA and the National Association of the Deaf (NAD), Oklahoma Association of the Deaf (OAD), and Tulsa Association of the Deaf (TAD). Null has provided services to Polin through TSHA's independent living program.

¶ 3 On February 2, 2012, Null filed a Petition for Protective Order alleging claims of harassment pursuant to Title 22 O.S.2011, § 60.1(3) and stalking per Title 22 O.S.2011, § 60.1(2). In her Petition, Null alleged that Polin had repeatedly harassed Null by making at least six complaints to Null's supervisor, Rebecca Renee Ryan, in an attempt to have Null fired. Ryan investigated each of these complaints and found them to be baseless. Ryan told Polin that she investigated the complaints and found the complaints did not warrant firing Null. Polin then contacted other agencies dealing with the deaf community, OAD and NAD, to pressure Ryan into firing Null.

¶ 4 In addition, Null asserted that, in January 2012, Ryan and Null each received a letter from Eric Smith, President of TAD, requesting an investigation of Null and stating that Null's conduct was unethical and

inappropriate and that Null was harassing Smith. After investigating these letters, Ryan learned that Polin wrote the letters at Smith's request, but inserted the statements concerning Null without Smith's knowledge.

¶ 5 Null stated that she is "afraid for my safety because people who disagree with Ms. Polin end up getting hurt and since I still have my job, I believe she will try to hurt me too." Null further stated "I have been the target of her latest harassment and have seen firsthand her anger and aggression towards anyone who does not accept her position, I am afraid for my safety." Based on these allegations, Null sought a protective order against Polin.

¶ 6 In addition, Null filed a police report with the Tulsa Police Department on February 2, 2012, before filing the Petition for Protective Order in district court, alleging Polin had harassed Null over a period of time, the most recent incident being January 10, 2012.[1]

¶ 7 The trial court entered an Emergency Order of Protection against Polin on February 2, 2012, and set a hearing on a final order of protection. The trial court initially ordered Polin not to come within three hundred yards of Null and not to have any contact with Null.

¶ 8 The trial court conducted a hearing on a final protective order on February 16, 2012. At the hearing, Null testified regarding Polin's numerous attempts to ruin Null's reputation in the deaf community and to have her fired from her employment at TSHA. Null testified she felt threatened by Polin because Polin becomes "very angry, very aggressive, and it tends to just get worse."[2] Null stated Polin is "very in your face whenever she becomes upset," and has the ability to hurt others.[3] Null stated that she no longer feels safe and feels threatened.

¶ 9 Null's supervisor at TSHA, Rebecca Ryan, also testified at the hearing on the protective order. Ryan testified she is the executive director of TSHA and is responsible for oversight of all services related to the agency. Ryan testified concerning the numerous unfounded complaints that Polin asserted against Null in an attempt to have her fired. Ryan determined that Polin would no longer interact with Null, but would deal with Ryan. However, Polin continued to bring non-issues concerning Null to Ryan. Ryan testified that Polin asked Ryan to fire Null every time that Ryan saw Polin. She also testified that Polin escalated her complaints to other agencies in the deaf community.

¶ 10 In addition, Ryan testified she received two certified letters from Eric Smith, the TAD President. The letters stated that Null was harassing Smith and had acted unethically. Ryan stated she spoke with Smith about the letters and he told her that he did not know Polin had inserted the information concerning Null in the letters and he was very upset. Smith told Ryan he did not have any issues with Null. Ryan testified that Polin admitted she wrote the letters.

¶ 11 Finally, Ryan testified that she is concerned about Null's safety because Polin has become more vocally aggressive toward Null, and that Polin is explosive and fixated on Null.

¶ 12 Eric Smith, President of TAD, also testified on Null's behalf. Smith testified that he did not ask anyone, including Polin, to draft letters containing content concerning Null. He stated that the letters were supposed to discuss certain by-laws and that Polin wrote the letters.

¶ 13 Defendant Polin testified that she had not been stalking or harassing Null.

¶ 14 After hearing evidence, the trial court found that Polin's actions constituted "malicious harassment, which by definition under the statute is officially stalking." The trial court stated:

---

1. Title 22 O.S.2011, § 60.2(A)(1) requires a person seeking a protective order based on stalking, who is not a family or household member or in a dating relationship with the defendant, to file a complaint with law enforcement prior to filing a petition for an order of protection with the district court.

2. Transcript of Protective Order Hearing, February 16, 2012, p. 49.

3. Transcript of Protective Order Hearing, February 16, 2012, p. 48.

The Court finds that that type of behavior where you're not only filing your own complaints, but drafting something that would purport to be an official complaint from someone else just to have them sign it has gone beyond what this Court would be considered acceptable in a commercial or business like complaint and into a vendetta.[4]

¶ 15 The trial court found that Null's evidence supported her claim and issued a Final Order of Protection against Polin for three years. The court ordered Polin to keep a distance of ten feet from Null.

¶ 16 Polin appeals the trial court's Final Order of Protection.

## STANDARD OF REVIEW

¶ 17 This Court is presented with a question of statutory construction, which presents a question of law. *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶ 5, 895 P.2d 731, 733 (approved for publication by the Oklahoma Supreme Court). This Court's review of the trial court's legal rulings is plenary, independent and non-deferential. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 (*citing Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)). If a statute is unambiguous and its meaning clear and there is no reason to apply rules of statutory construction, this Court will apply the meaning expressed by the language used. *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20.

¶ 18 This Court reviews the trial court's issuance of a protective order under the Protection from Domestic Abuse Act, 22 O.S.2011, §§ 60–60.18, under the abuse of discretion standard. *Curry v. Streater*, 2009 OK 5, ¶ 8, 213 P.3d 550, 554. "Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law. To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence." *Id.* (citations omitted).

## ANALYSIS

¶ 19 Polin first argues that the trial court erred in finding Null was a victim of stalking and issuing a Final Order of Protection against Polin. Polin contends that, under the Title 22 O.S.2011, § 60.1(2) definition of stalking, the trial court must define harassment as applying to only family or household members or those in a dating relationship as provided in the harassment definition of Section 60.1(3). Polin contends she is not in one of the statutorily-defined relationships with Null and, therefore, the trial court erred in finding Polin "maliciously harassed" Null, which constituted "stalking" pursuant to Section 60.1(2).

¶ 20 Null is a victim of stalking because Title 22 O.S.2011, § 60.1(2) defines stalking as follows:

2. "Stalking" means the willful, malicious, and repeated following or harassment of a person by an adult, emancipated minor, or minor thirteen (13) years of age or older, in a manner that would cause a reasonable person to feel frightened, intimidated, threatened, harassed, or molested and actually causes the person being followed or harassed to feel terrorized, frightened, intimidated, threatened, harassed or molested. Stalking also means a course of conduct composed of a series of two or more separate acts over a period of time, however short, evidencing a continuity of purpose or unconsented contact with a person that is initiated or continued without the consent of the individual or in disregard of the expressed desire of the individual that the contact be avoided or discontinued.

Section 60.1(3) defines harassment as follows:

3. "Harassment" means a knowing and willful course or pattern of conduct by a family or household member or an individual who is or has been involved in a dating relationship with the person, directed at a

4. Transcript, Protective Order Hearing, February 16, 2012, p. 59.

specific person which seriously alarms or annoys the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial distress to the person. "Harassment" shall include, but not be limited to, harassing or obscene telephone calls in violation of Section 1172 of Title 21 of the Oklahoma Statutes and fear of death or bodily injury.

¶ 21 The Protection from Domestic Abuse Act (Act) provides immediate relief for victims of domestic abuse, stalking, harassment, or rape. *Curry v. Streater*, 2009 OK 5 at ¶ 9, 213 P.3d at 554. "A careful balance must be achieved for a statute addressing stalking to be effective. Stalking statutes must be defined as broadly as possible to maximize victim protection, but narrowly enough to prevent serious abuse." *State v. Saunders*, 1994 OK CR 76, ¶ 7, 886 P.2d 496, 497 (interpreting the criminal counterpart to the Act).

¶ 22 Polin asks this Court to narrowly construe the definition of "stalking" under Section 60.1(2) to provide that a victim of willful, malicious, and repeated harassment under the stalking definition is limited to a family or household member or a person in a dating relationship with the defendant, as required by the Section 60.1(3) harassment definition. Under Polin's interpretation of the stalking definition, a victim that was being harassed, but not necessarily followed, as in the present case, would not have a recourse against the person harassing him or her unless they were in one of the statutorily-defined relationships.

¶ 23 At first blush, it appears that Polin's argument has merit. However, a closer inspection of the statute reveals otherwise.

¶ 24 Under the Section 60.1(2) stalking definition, the harassment that is referred to is the "willful, malicious, and repeated ... harassment of a person by an adult, emancipated minor, or minor thirteen (13) years of age or older." In comparison, the harassment as defined in Section 60.1(3) is a "knowing and willful course or pattern of conduct by a family or household member or an individual who is or has been involved in a dating relationship with the person." The Section 60.1(2) harassment requires a "malicious" element, while the Section 60.1(3) harassment does not have that requirement.

¶ 25 In addition, while both the stalking and harassment definitions have a subjective and an objective component, the standards differ. Under stalking, the questioned action must "cause a reasonable person to feel frightened, intimidated, threatened, harassed, or molested" (objective standard) and actually cause the victim to feel "terrorized, frightened, intimidated, threatened, harassed or molested" (subjective standard). In contrast, under the harassment definition, the course of conduct must cause a "reasonable person to suffer *substantial* emotional distress" (objective standard) and "must actually cause *substantial* distress to the person" (subjective standard). Thus, the harassment definition requires a more heightened effect than the stalking definition.

¶ 26 Furthermore, the "stalking" definition and the "harassment" definition differ on defining the individual who takes the offensive action. Under the stalking statute, the "willful, malicious and repeated harassment" must be "by an adult, emancipated minor, or minor thirteen (13) years of age or older." Under the harassment statute, the offensive conduct must be taken "by a family or household member or an individual who is or has been involved in a dating relationship with the person."

¶ 27 Thus, a careful reading of the plain language of the statute distinguishes malicious harassment under Section 60.1(2), as correctly found by the decision of the trial court in the present case, from harassment as defined in Section 60.1(3).

¶ 28 "The primary goal of statutory construction is to ascertain and follow the intention of the Legislature." *TRW/ Reda Pump v. Brewington*, 1992 OK 31 at ¶ 5, 829 P.2d at 20. If a statute is unambiguous and there is no reason to apply rules of statutory construction, this Court will accord the meaning expressed by the clear language of the statute. *Id.* Furthermore, this Court will presume that the Legislature has not

done a vain act in drafting legislation. *Marquette v. Marquette*, 1984 OK CIV APP 25, ¶ 8, 686 P.2d 990, 993. This Court will avoid an interpretation of a statute which would lead to an absurd result provided it does not violate the legislative intent. *Id.*

¶ 29 The intent of the Act is to provide protection to victims of offensive conduct under the Act. In 2010, the Legislature amended the definition of "stalking" under the Act to include malicious harassment.[5] If the Legislature had intended to limit the availability of the stalking remedy to only those in a statutorily-defined class, it could have expressly done so. The express language of the Act reflects the Legislature did not intend to limit protection under the Act to such a narrow class.

¶ 30 Here, this Court finds that the word "harassment" used in the "stalking" definition is not to be confined to the definition set forth in Section 60.1(3). To hold otherwise would violate the intent of the Act to provide protection to a broad class of victims of domestic violence. Thus, this Court finds Polin's argument that the trial court erred in not applying the harassment definition of Section 60.1(3) in interpreting the Section 60.1(2) definition of stalking to be without merit.

¶ 31 Polin next argues that the trial court's decision to issue a protective order based on stalking was against the evidence and an abuse of discretion. This Court disagrees.

¶ 32 Null presented evidence that Polin continually contacted Null and her supervisor to complain about Null's conduct and to demand that Null be fired. In addition, Polin fraudulently drafted letters for Mr. Smith's signature and inserted information concerning Null and her alleged unethical actions that Mr. Smith had not requested be included in the letter.

¶ 33 "Where there is conflicting evidence on an issue of fact, we defer to the judgment of the trial court who is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility." *Triplett ex rel. K.T. v. Miller*, 2008 OK CIV APP 27, ¶ 3, 179 P.3d 1285, 1287. After considering the evidence presented at the hearing, this Court finds the trial court did not abuse its discretion in issuing a Final Order of Protection against Polin based on stalking, Title 22 O.S.2011, § 60.1(2).

## CONCLUSION

¶ 34 Based on the foregoing, this Court finds the trial court did not err in issuing a Final Order of Protection against Polin and in favor of Null. The trial court's Final Order of Protection is affirmed.

¶ 35 **AFFIRMED.**

THORNBRUGH, P.J., concurs, and GOODMAN, J., concurs specially.

GOODMAN, J., specially concurring.

¶ 1 I concur, but wish to write separately to emphasize the larger problem alluded to in the majority opinion: that the Protection from Domestic Abuse Act, 22 O.S.2011, §§ 1 through 19 (Act), reflects a hodgepodge attempt by the Legislature to address a growing problem. This author is of the opinion that the Act has been repeatedly amended to address problems created by the Act itself.[1] In the case under review, much is made of the defined-term "harassment" as a distinct basis for a protective order, which by definition can only be sought by a victim against a family or household member or one involved in a dating relationship. *See* 22 O.S.2011,

---

5. Section 60.1(2) previously defined "stalking" as follows:

    "Stalking" means the willful, malicious, and repeated following of a person by an adult, emancipated minor, or minor thirteen (13) years of age or older, with the intent of placing the person in reasonable fear of death or great bodily injury.

1. For instance, this Court issued *Spielmann v. Hayes*, 2000 OK CIV APP 44, 3 P.3d 711, in which we held a teacher had standing under the Act to obtain a protective order against a student for harassment. That opinion was issued at a time in which the Act did not require a family or personal relationship to exist between the parties. Because of amendments to the Act, were the same facts in *Spielmann* before this Court today, the teacher would have no standing to prosecute a claim of harassment, though she might have a claim for stalking.

§ 60.1(3). The Legislature subsequently uses the term "harassment" to define the term "stalking," which carries with it no requirement for a victim to prove a family, household, or dating relationship. *See* 22 O.S.2011, § 60.1(2). Thus, unnecessary ambiguity is introduced into an otherwise straightforward statute, requiring further analysis as to whether or not the plaintiff was entitled to relief under the Act for stalking because there was no proof of these aforementioned relationships.

¶ 2 Nevertheless, I agree the trial court was correct in its conclusions. Title 22 O.S. 2011, § 60.1(2) provides two definitions of "stalking." The first was addressed in the majority opinion. "Stalking" is further defined in § 60.1(2) as:

[ ]Stalking also means a course of conduct composed of a series of two or more separate acts over a period of time, however short, evidencing a continuity of purpose or unconsented contact with a person that is initiated or continued without the consent of the individual or in disregard of the expressed desire of the individual that the contact be avoided or discontinued. Unconsented contact or course of conduct includes, but is not limited to:

a. following or appearing within the sight of that individual;

b. approaching or confronting that individual in a public place or on private property;

c. appearing at the workplace or residence of that individual;

d. entering onto or remaining on property owned, leased, or occupied by that individual;

e. contacting that individual by telephone;

f. sending mail or electronic communications to that individual; or

g. placing an object on, or delivering an object to, property owned, leased or occupied by that individual.

¶ 3 Upon my review of the record and applicable law, I find sufficient evidence to support a finding of stalking under § 60.1(2)'s "alternate" definition. I therefore concur with the majority opinion.