2007 OK CIV APP 76

**T.W. SNYDER and Caryn Snyder, Plaintiff/Appellees,**

v.

**Jerry STANDIFER, Defendant/Appellant.**

**Nos. 103,484, 103,485.**

Court of Civil Appeals of Oklahoma, Division No. 1.

July 20, 2007.

T.W. Snyder, Caryn Snyder, Colbert, OK, Pro se.

Mark Andrew Morrison, Durant, OK, for Defendant/Appellant.

CAROL M. HANSEN, Presiding Judge.

¶ 1 On January 25, 2006, pursuant to The Protection From Domestic Abuse Act, 22 O.S.2006 Supp. 60 *et seq,* Plaintiffs, Thomas W. Snyder a/k/a T.W. Snyder [Thomas] and his wife, Caryn Snyder [Caryn], on behalf of themselves and their two minor children, filed a petition for a protective order against Jerry Cortez Standifer [Jerry].[1] On January 23, 2006, two days earlier, Jerry and his wife, Nancy, had filed a petition for a protective order against Thomas.[2] Both cases, as well as a third case, were consolidated for hearing.[3]

¶ 2 On May 25, 2006, the trial court granted Thomas and Caryn's petition for protective order against Jerry on the ground of harassment; it denied Jerry and Nancy's petition for a protective order against Thomas. In that order, the trial court specifically found:

> ... The parties have a long-standing disagreement due to some failed business efforts. The animosity between the parties is evident.

> In the most recent incident on or about January 20, 2006, Standifer appeared at Bowles Gas Station while T.W. Snyder was there. Testimony at trial was conflicting as to whether Standifer or T.W. Snyder initiated this particular confrontation, but the court finds Standifer made comment(s) to Mr. Snyder in passing. T.W. Snyder advised Standifer that he, Snyder, did not want to converse with Standifer. When Standifer was leaving the business, T.W. Snyder kicked at the [sic] Standifer and used some choice language. The court finds this incident was provoked by the actions of Standifer. Previously, on or about October 11, 2005, Standifer had ap-

---

1. Pursuant to section 60.1, the grounds for issuance of a protective order are defined as follows:

   1) "Domestic abuse" means any act of physical harm, or the threat of imminent physical harm which is committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who are family or household members or who are or were in a dating relationship;
   2) "Stalking" means the willful, malicious, and repeated following of a person by an adult, emancipated minor, or minor thirteen (13) years of age or older, with the intent of placing the person in reasonable fear of death or great bodily injury;
   3) "Harassment" means a knowing and willful course or pattern of conduct by a family or household member or an individual who is or has been involved in a dating relationship with the person, directed at a specific person which seriously alarms or annoys the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial distress to the person. "Harassment" shall include, but not be limited to, harassing or obscene telephone calls in violation of Section 1172 of Title 21 of the Oklahoma Statutes and fear of death or bodily injury.

2. Thomas and Caryn are husband and wife. Jerry and Nancy are husband and wife. Jerry is Caryn's father. Nancy is Caryn's stepmother.

3. Jerry and Nancy also filed a petition for a protective order against Burney Crenshaw, husband of Jerry's daughter, Jamie (and sister of Caryn). In the Crenshaw case, Jerry and Nancy were granted a protective order against Crenshaw. Crenshaw did not appeal that decision.

peared at the hospital room of Caryn Snyder on the occasion of the birth of one of her children. According to the Snyders, Standifer had been advised not to come to the hospital. Standifer was taken by the arm and removed from the hospital room by T.W. Snyder.

T.W. Snyder appeared that afternoon at Standifer's place of business and had another verbal confrontation where T.W. Snyder advised Standifer again to have no contact with the Snyders. At some point, Standifer advanced toward Snyder and Snyder pushed Standifer back with an open hand. This was the only physical contact between Standifer and Snyder at the place of business. The court finds this sequence of events was provoked by the actions of Jerry Cortez Standifer. This incident was one of the incidents related in Jerry Cortez Standifer's petition for protective order.

In at least one instance Standifer flagged down Caryn Snyder's vehicle and she and Standifer engaged in conversation. Caryn Snyder also testified that Jerry Cortez Standifer has done things to aggravate T.W. Snyder since October, 2005. Mrs. Snyder also testified that these confrontations are upsetting and that she does not want these confrontations occurring around her children.

The court is convinced that there are severe and longstanding problems within the family. Quite simply, there are situations in life that are unpleasant and difficult to resolve. The parties involved are strong willed and firm in their belief that they are in the right. It is clear that Jerry Cortez Standifer will not abide by the expressed wishes of the plaintiffs that Jerry Cortez Standifer has no contact with the plaintiffs. Accordingly, Thomas (T.W.) Snyder and Caryn Snyder petitioners are hereby granted a final protective order against Jerry Cortez Standifer on the ground of harassment. . . .

Mr. Standifer's petition for protective order against Thomas (T.W.) Snyder is hereby dismissed. Nancy Standifer's petition for protective order against Thomas (T.W.) Snyder is also dismissed, since her basis for filing against Snyder is only that she was present during the heated conversation at Standifer's business on or about October 11, 2005, when Mr. Snyder told her to "shut up."

¶ 3 On May 26, 2006, the trial court issued a final protective order wherein it ordered Jerry ". . . to have **no contact** with Petitioner, either in person or by telephone, at any time or place." Jerry appeals these orders.[4]

¶ 4 Jerry contends the trial court abused its discretion in granting Thomas and Caryn a protective order against him because its findings that he harassed Thomas and Caryn on three separate occasions are not supported by the evidence. He argues there is specific evidence of just three opportunities for him to have harassed Thomas and Caryn: when he visited the new grandchild at the hospital over the previous objections of Thomas and Caryn; when he flagged down Caryn's car to talk with her; and when Caryn visited his home to get some documentation regarding a horse. He asserts there is no evidence he harassed or attempted to harass them during these encounters.

¶ 5 The Court of Civil Appeals reviews the trial court's application of a statute to the facts presented under a *de novo* standard. *Spielmann v. Hayes ex rel. Hayes,* 2000 OK CIV APP 44, 3 P.3d 711.[5] Moreover, where there is failure to file an answer brief, if the brief in chief is reasonably supportive of the appellant's allegations of error, the reviewing court will ordinarily reverse the appealed judgment with appropriate directions; however, if the brief in chief is not reasonably supportive of the allegations of error, the trial court's decision will be affirmed. *Fleet Real Estate Funding Corp. v. Frampton,* 1991 OK CIV APP 32, 812 P.2d 416.

We are issuing simultaneous opinions today in the present appeal and in 103,485.

---

4. Thomas and Caryn did not file an answer brief. This cause stands submitted on appellant's brief only. In companion case 103,485, Jerry appeals the trial court's dismissal of his and Nancy's petition for protective order against Thomas.

5. In *Spielmann,* the matter was submitted for appeal on appellant's brief only.

¶ 6 Section 60.1(3) defines harassment as a knowing or willful course of conduct by a family member [6] directed at a specific person which seriously annoys that person and serves no legitimate purpose. That course of conduct, as such, would cause a reasonable person to suffer substantial emotional distress and must actually cause the substantial distress to the person.

 ¶ 7 Both Caryn and Thomas testified there had been long-standing animosity between them and Jerry. As a result of that, they did not want to be around him nor did they want their children around him.[7] They testified Jerry knew that. In spite of his knowledge of their wishes, he followed a course of conduct wherein he would confront Caryn, even with her older daughter present. Caryn testified she did not want confrontations with Jerry with her daughter present because it was too emotional for her. Nevertheless, he would "... pull her over at different places." He flagged her down with her four year old daughter in her car and confronted her. She explained she was emotionally distressed by this. He did the same thing following a wedding Caryn attended, and she also testified that when she is present at Bowles Station, "... he pulls up in there just because he sees that I'm there by myself, without T.W. and he feels he can overpower me. And I do not want those type of confrontations and situations around my children." Jerry did not dispute this course of conduct.

¶ 8 This course of conduct continued with his visit to the hospital. Jerry admits he went there "... over objection of Caryn, Thomas and Jamie...." Additionally, Caryn testified Jerry's presence at the hospital was stressful to her. Jerry does not dispute Thomas took him by the arm and escorted him out of the hospital room.

¶ 9 In applying § 60.1(3) to these incidents, there is evidence these willful confrontations with Caryn and Thomas seriously annoyed and alarmed them, served no legitimate pur-

pose, and caused them substantial emotional distress.

¶ 10 Jerry's brief in chief is not reasonably supportive of his allegations of error. The May 25th and May 26th orders are supported by the law and the evidence. *See Spielmann v. Hayes ex rel. Hayes, supra.*

AFFIRMED.

BUETTNER, J., and BELL, J., concur.

---

**6.** Jerry does not dispute he is a "family member."

**7.** At the time of the hearing, Caryn and Thomas had a four year old daughter and an infant daughter.