MERITOR, INC. v. STATE ex rel. BD. OF REGENTS OF UNIVERSITY OF OKLA.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MERITOR, INC. v. STATE ex rel. BD. OF REGENTS OF UNIVERSITY OF OKLA.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MERITOR, INC. v. STATE ex rel. BD. OF REGENTS OF UNIVERSITY OF OKLA.
2019 OK CIV APP 64
Case Number: 117498
Decided: 09/27/2019
Mandate Issued: 10/30/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 64, __ P.3d __

 


MERITOR, INC., Petitioner/Appellant,
and
TEXTRON, INC., Petitioner,
v.
STATE OF OKLAHOMA, ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA, Respondent,
and
STATE OF MISSISSIPPI, Intervenor/Appellee.
APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA
HONORABLE MICHAEL D. TUPPER, JUDGE
REVERSED AND REMANDED WITH DIRECTIONS
Sanford C. Coats, Melanie Wilson Rughani, CROWE & DUNLEVY, Oklahoma City, Oklahoma, for Petitioner/Appellant,
Stephanie Theban, RIGGS ABNEY, NEAL, TURPEN, ORBISON & LEWIS, Tulsa, Oklahoma, and
Marquette Wolf, TED D. LYON & ASSOCIATES, Mesquite, Texas, for Intervenor/Appellee.
Kenneth L. Buettner, Judge:
¶1 Petitioner/Appellant Meritor, Inc., appeals the denial of its request for a permanent injunction barring Respondent State of Oklahoma, ex rel. Board of Regents of the University of Oklahoma (OU) from releasing certain documents in response to a request filed under the Oklahoma Open Records Act (OORA or the Act). Meritor was a defendant in several suits for groundwater contamination in Mississippi federal and state courts. In preparing its defense to those actions, Meritor's counsel retained a non-testifying consulting expert who had water samples relevant to the litigation analyzed by an OU lab. An attorney representing some of the plaintiffs in the Mississippi actions sought to obtain the OU lab results ("the records") via an OORA request. After OU indicated it would release the records absent a court order barring their release, Meritor unsuccessfully sought a permanent injunction against OU. On de novo review of the question of law presented, we find the records sought are exempt from disclosure under OORA on two bases. As a matter of first impression in Oklahoma, we adopt the United States Supreme Court's holding that matters which are "normally or routinely privileged" come within the Act's evidentiary privilege exemption. The records at issue here are work product of an undisclosed, non-testifying expert, which is normally and routinely privileged and therefore exempt from disclosure under the Act. Additionally, the records fall within the Act's research results exemption. We reverse the trial court's order denying Meritor's request for a permanent injunction and remand with directions to the trial court to enter a permanent injunction barring release of the records at issue in this case.
¶2 Meritor filed its Petition seeking an injunction against OU August 24, 2018. It asserted that in 2016, ten plaintiffs had sued it and Petitioner Textron, Inc. in federal court in Mississippi for property damage.[1] Meritor asserted that in preparing its defense in the Mississippi cases, it retained a consulting expert to conduct compound specific isotope analysis (CSIA) on groundwater in the subject property. The consulting expert hired scientists in the Isotope Lab in the Geology and Geophysics Department of OU to perform the analysis. Meritor further asserted it had elected not to use or disclose the consulting expert nor to use the CSIA results in the litigation. Meritor alleged it therefore did not disclose the expert or the results from the OU lab to anyone, including any testifying expert in the Mississippi actions. Meritor alleged it had asserted the consulting expert privilege when the Mississippi plaintiffs sought production of CSIA results in that case.
¶3 Meritor next asserted the Mississippi plaintiffs' counsel, Marquette Wolf, had made an OORA request to its consulting expert's subcontractor, the lab at OU, seeking records relating to "any and all groundwater sampling for CSIA . . . analyses on Chlorinated Ethenes in Grenada, Mississippi . . . Entities involved included Ramboll, T&M, and Thompson Hine."[2] Meritor alleged the documents sought in the OORA request were privileged and not records as defined by the OORA. Meritor asserted OU had indicated that records protected by an evidentiary privilege are not considered records under OORA, but that unless prevented by a court order, it intended to produce the requested materials. Meritor asserted claims for a temporary injunction and for violation of OORA.
¶4 On the same day, Meritor filed a Motion for Temporary Restraining Order and Temporary and Permanent Injunction, in which it asserted it would be irreparably harmed if OU disclosed the records. Following a brief hearing, the trial court entered a Temporary Restraining Order barring release of the records August 24, 2018. On August 23, 2018, Meritor and Marquette Wolf participated in a telephonic hearing with a Federal Magistrate in Mississippi, in which Meritor sought an order from that court barring Marquette Wolf from receiving the records. In its Order, the magistrate determined that in the August 23, 2018 telephonic hearing, Meritor had not presented evidence to show the records were privileged. Notably, the magistrate did not make a finding that the records were not privileged, but instead concluded that the question whether the records could be used in the Mississippi Federal Court was left to the parties and the Federal District Judge presiding there.[3] 
¶5 Mississippi Attorney General Jim Hood filed motions to intervene and to dissolve the TRO and an objection to Meritor's request for a permanent injunction August 29, 2018.[4] Intervenor argued that OU was required to release the records because the judge in the Mississippi federal case ruled they were not privileged. Meritor did not object to Mississippi's request to intervene.

¶6 OU answered Meritor's Petition September 13, 2018, and denied it had violated the OORA in stating its intent to release the records.
¶7 Hearing on Meritor's motion for a permanent injunction and on Intervenor's motion to dissolve the temporary restraining order was held September 26, 2018. The trial court entered its Order October 1, 2018, in which it found the records are public records, that Meritor created its own problem by having the testing performed at a public institution and thereby voluntarily causing the records to be part of the public domain, that the records are of significant interest to the State of Mississippi, and that Meritor had failed to show that the records were confidential and privileged. The court held that the records created by OU are not subject to the consulting expert or work product privileges, and that Meritor had failed to prove any proprietary interest in the records. The trial court therefore dissolved the temporary restraining order, denied Meritor's motion for permanent injunction, and directed that the records were subject to disclosure under OORA. On motion of Meritor, the trial court stayed its ruling pending appeal.
¶8 Meritor now appeals the denial of its request for a permanent injunction against disclosure of the records.


As an equitable matter, "[i]njunction is an extraordinary remedy and relief by this means should not be granted lightly." . . . We review the grant or denial of an injunction to determine whether the trial court abused its discretion in making its decision. . . . "Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law. . . ."
Autry v. Acosta, Inc., 2018 OK CIV APP 8, ¶24, 410 P.3d 1017 (emphasis supplied; citations omitted). The general rule in equitable actions is the appellate court may modify the judgment to render the judgment the trial court should have. Malnar v. Whitfield, 1985 OK 82, ¶5, 708 P.2d 1093. The basic facts alleged in Meritor's Petition are not disputed. The first impression question of law presented is whether the Act requires or allows disclosure of public records where those records were created for an undisclosed, retained expert witness hired by attorneys in preparation for litigation. We review questions of law de novo, in which we have "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶14, 859 P.2d 1081, 1084. Necessarily this rule includes questions of law on the application of OORA to undisputed facts. County Records, Inc. v. Armstrong, 2012 OK 60, ¶6, 299 P.3d 865.
¶9 The first provision of OORA sets out the policy goal of the Act:


As the Oklahoma Constitution recognizes and guarantees, all political power is inherent in the people. Thus, it is the public policy of the State of Oklahoma that the people are vested with the inherent right to know and be fully informed about their government.
51 O.S.2011 §24A.2 (emphasis supplied). The Act's expressed purpose "is to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power."[5] Id.
¶10 Meritor first argues that the CSIA test results are not "records" as defined by the Act and therefore are not subject to public disclosure.[6] For this argument, Meritor relies on Farrimond v. State ex rel. Fisher, 2000 OK 52, 8 P.3d 872. In Farrimond, the Oklahoma Insurance Commissioner was appointed as receiver for an insurance company and in that role took possession of the insurance company's records. The plaintiff in Farrimond made an OORA request seeking disclosure of the insurance company's records in possession of the Commissioner. The trial court ordered disclosure. On appeal, the Oklahoma Supreme Court found that although the company's records were in possession of a public official, they did not come into public possession "in connection with the transaction of public business, the expenditure of public funds or the administering of public property," as required by the Act. Id. at ¶12. The court relied on the Oklahoma Insurance Code provision that where a company has been placed under receivership, the receiver takes possession and title to the company's records by court order, so that "receivership property is in possession of the court, the receiver is the representative of the court, and the right of the receiver to receivership property is derived from the entity which has been placed in receivership." Id. at ¶15, citing Norman v. Trison Development Corp., 1992 OK 67, ¶7, 832 P.2d 6. The court further explained that in insurance receivership cases, "the Insurance Commissioner administers not public property but the property of the failed insurer and he does so under the direction of the district court." 2000 OK 52 at ¶20.
¶11 Meritor contends this case is analogous to Farrimond because here a private company submitted its own groundwater samples to be tested by a lab at OU. Plainly OU did more than simply receive and hold the samples.[7] The OU lab conducted specifically requested tests and reported the results to Meritor's consulting expert. Additionally, OU did not hold the materials pursuant to court order or a particular statute, as the Commissioner did in Farrimond. Because we find Meritor is entitled to relief based on exemptions, whether or not the documents at issue are records as defined by the Act is not decided.
¶12 Meritor next contends the records may not be disclosed because they are privileged work product. Meritor bears the burden of showing material it submitted to a public body is protected by a privilege:


The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records. Except where specific state or federal statutes create a confidential privilege, persons who submit information to public bodies have no right to keep this information from public access nor reasonable expectation that this information will be kept from public access; provided, the person, agency or political subdivision shall at all times bear the burden of establishing such records are protected by such a confidential privilege.
51 O.S.2011 §24A.2 (emphasis supplied).[8] Meritor presented testimony from one of its attorneys, Timothy Coughlin, who testified that in preparation for the litigation in Mississippi, Meritor hired Laurie LaPat-Polasko, a scientist employed by Ramboll Corporation, as a non-testifying retained expert witness.[9] As such, Meritor was not required to disclose LaPat-Polasko or her opinions during discovery. Fed. Rules of Civ. Proc. Rule 26(b). Intervenor does not dispute this fact. Intervenor also appears to concede that a sub-contractor of LaPat-Polasko would not be discoverable on the same basis, by arguing that Meritor could have kept the test results secret simply by "being careful" to ask its retained expert to have the testing done in a private lab and that Meritor created its own problem by having the CSIA testing done in a public lab. This assertion amounts to an admission that the results would be privileged in the Mississippi litigation. Intervenor argued at the hearing and on appeal, without authority, that Meritor was required to present a written confidentiality agreement with OU to meet its burden of proving the records are privileged. Intervenor also convinced the trial court that the Mississippi Magistrate found that the records are not privileged. We have explained above that the Magistrate's Order found only that Meritor did not present sufficient evidence of privilege at that telephonic hearing.[10] 
¶13 In the September 26 hearing, Intervenor presented testimony only from Sharon Hsieh, OU's open records officer. Meritor presented the testimony of Coughlin and Devin Rowe. Coughlin testified that his firm, as counsel for Meritor, and another law firm representing Textron in the Mississippi litigation, hired LaPat-Polasko and her assistant, Rowe, as consulting experts to do CSIA testing. Coughlin testified LaPat-Polasko and Rowe were never identified as testifying experts, although two other Ramboll employees were identified as testifying experts. Coughlin explained that Mr. Peeples, a non-retained testifying expert, was employed by T&M, Meritor's remediation consultant in Mississippi. Coughlin testified T&M drew the water samples from wells and those samples were used by LaPat-Polasko and Rowe for testing. Coughlin knew that LaPat-Polasko intended to have the testing done at OU. Coughlin testified OU billed LaPat-Polasko and after she had arranged for payment, Meritor paid LaPat-Polasko. Coughlin testified that the OU analysis results had been seen only by LaPat-Polasko, Rowe, and the lawyers. Coughlin also testified the results had not been seen by Mr. Peeples, its testifying expert. In response to the question why he knew no one else had seen the results, Coughlin explained:



We engaged Ms. LaPat(-Polasko) as a consulting expert, and we made that specifically clear. We also made specifically clear the issues of confidentiality and the proprietary nature of the engagement. And because of the work that we're asking to be done, we made sure that she was walled off and her work was walled off from others.
Coughlin testified no court had ordered Meritor to disclose the CSIA results. Coughlin testified there was not a written contract with OU scientist Dr. Kuder but that he was engaged to do the testing, he completed the testing, and he billed LaPat-Polasko, so that there was an oral agreement.
¶14 Devin Rowe testified he is an employee of Ramboll who assisted LaPat-Polasko in interpreting the CSIA data. Rowe testified he recommended LaPat-Polasko use Dr. Kuder at OU because Rowe had previously used that lab, Rowe knew that only a few labs are able to produce quality data of the type sought, and Rowe considered the OU lab to be the best. Rowe testified he kept no records of this project, but rather he "would review things and prepare stuff and send it to" LaPat-Polasko because it was understood they were keeping the records confidential. Rowe testified Ramboll retained the OU lab as a subcontractor. Rowe testified his only contact in the lab was Dr. Kuder and that it was Dr. Kuder who alerted him when he received Wolf's OORA request. Rowe testified he "consider(ed) our data to be our own proprietary data that's owned by the client who commissioned us to do the work. It's highly unusual for anybody else to see the data."
¶15 This undisputed testimony shows facts known by or opinions held by LaPat-Polasko were not discoverable and were therefore privileged.


Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
(i) as provided in Rule 35(b); or
(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.
Fed.R.Civ.Pro. Rule 26(b)(4)(D).
[11] In the federal case involving these parties, the U.S. District Judge made the following findings, regarding Mr. Peeples, in a discovery order:


The Court has reviewed the text and the comments to Rule 26(b)(4) and has found nothing which suggests the rule was intended to alter traditional rules of agency which allow an agent to act on behalf of a principal. Accordingly, the Court is inclined to believe that a consulting expert may, under some circumstances, act as an agent in hiring a contractor to perform certain work in anticipation of litigation and that under such circumstances, the contractor would be deemed a consulting expert under Rule 26(b)(4)(D).
Cooper v. Meritor, Inc., 2018 WL 2223325 (N.D.Miss., May 15, 2018). Intervenor argues the records are not privileged solely because they were created at a public institution in the absence of a written confidentiality agreement. Intervenor has not argued on appeal that the records are not privileged because OU was a subcontractor hired by an undisclosed retained expert.
[12] 
¶16 In other words, according to Intervenor, the only reason he or Wolf could obtain the records is because the testing was done at a public lab.[13] This suggests that Wolf and Intervenor are using OORA to circumvent the Discovery Rules.[14] The United States Supreme Court has explained that open records acts are not intended to replace the discovery rules. See U.S. v. Weber Aircraft Corp., 465 U.S. 792, 801-802, 104 S.Ct. 1488, 1494, 79 L.Ed.2d 814 (1984) ("Moreover, respondents' contention that they can obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the FOIA. . . . We do not think that Congress could have intended that the weighty policies underlying discovery privileges could be so easily circumvented.") We have found no Oklahoma authority addressing this precise issue. The United States Supreme Court has addressed this issue in several cases.

¶17 In F.T.C. v. Grolier Inc., 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), the Federal Trade Commission had investigated a company as part of a civil penalty action filed by the Justice Department. The suit was later dismissed. Two years later, Grolier, the parent company of the investigated company, filed an FOIA request with the FTC seeking documents related to the investigation of its subsidiary. The FTC declined the request based on FOIA's Exemption 5, which provides that FOIA does not require disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency, . . . " See 5 U.S.C. §552(b)(5). Grolier appealed the FTC's administrative decision. The U.S. District Court affirmed, finding that the documents in dispute were either attorney work-product, attorney-client communications, or internal pre-decisional agency material. The Court of Appeals found that the documents which were withheld on the basis of the work-product rule were not exempt under FOIA unless the FTC could show that litigation related to the terminated action exists or potentially exists. The Court of Appeals held that FOIA's Exemption 5 was co-extensive with the work-product privilege under the Federal Rules of Civil Procedure and concluded that "a requirement that documents must be disclosed in the absence of the existence or potential existence of related litigation . . . best comported with the fact that the work-product privilege is a qualified one." 462 U.S. at 22-23. The FTC then sought certiorari.
¶18 The Supreme Court agreed that the documents at issue were work-product and that Congress had enacted Exemption 5 with the work-product privilege in mind. Id. at 23. After explaining the development of the work-product rule in discovery, the court noted that at the time FOIA was enacted, there was no consensus on the temporal scope of the work-product rule. Id. at 24-25. The court noted the test for applying Exemption 5 had been widely held to be whether the requested documents "would be 'routinely' or 'normally' disclosed upon a showing of relevance." Id. at 26. Additionally, the court noted that the work-product privilege had been widely held to apply to materials after termination of the litigation for which they were prepared, regardless of whether related litigation was pending or planned. Id. The court also noted its own previous holding that "Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context." Id. at 26-27 (emphasis in original). The court found therefore that it could not be said that work-product materials are routinely available in subsequent litigation. Id. The court then explained that although the work-product rule has been held to be qualified, that was not relevant for purposes of deciding whether materials are privileged under Exemption 5 of the FOIA. The court explained:


It makes little difference whether a privilege is absolute or qualified in determining how it translates into a discrete category of documents that Congress intended to exempt from disclosure under Exemption 5. Whether its immunity from discovery is absolute or qualified, a protected document cannot be said to be subject to "routine" disclosure.
Under the current state of the law relating to the privilege, work-product materials are immune from discovery unless the one seeking discovery can show substantial need in connection with subsequent litigation. Such materials are thus not "routinely" or "normally" available to parties in litigation and hence are exempt under Exemption 5.
Id. at 27. The court further found that even though the materials sought by Grolier had been ordered to be disclosed in the previous litigation, they still were exempt from disclosure under FOIA Exemption 5 because a prior disclosure under order based on need does not show that such materials are "routinely" discoverable. Id. at 28 (emphasis supplied). The court explained "(t)he logical result of respondent's position is that whenever work-product documents would be discoverable in any particular litigation, they must be disclosed to anyone under the FOIA." Id.
¶19 T he court relied on its previous holding that Exemption 5 exempts only those documents normally privileged in the civil discovery context. Id. citing N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The court concluded that "under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared. Only by construing the exemption to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered." Id.
¶20 Although the Grolier court decided application of the work-product privilege in the context of Exemption 5 of FOIA, we find its analysis persuasive in our application of the privilege exemption in OORA, in the absence of Oklahoma authority on this question. OORA plainly exempts from disclosure information submitted to a public entity so long as it is covered by a specific federal or state privilege. As noted above, Rule 26 of the Federal Rules of Civil Procedure expressly affords a privilege from discovery to retained non-testifying experts and materials they create.
[15] 
¶21 The rationale for this rule is simple: if something is routinely of the type that it would be privileged, it is for the court in which the materials would or would not be discoverable to decide, rather than a public body or court ruling on an open records request. If the documents are found to be privileged, they are privileged whether or not they are public records and a denial of an open records request on this basis avoids inadvertent disclosure of privileged matter. Of course if materials are not privileged, they are discoverable from the litigant possessing them and therefore no open records proceeding is necessary. This rule avoids the exact issue in this case, which is an Oklahoma court attempting to decide whether records were privileged from discovery in cases pending in two forums in another state. The only question an agency or court in Oklahoma needs to resolve in ruling on a claim that public records are privileged is whether those records are of a type that is routinely privileged. Work-product is routinely privileged pursuant to federal and state law and the records in this case are therefore exempt from disclosure.[16] 
¶22 Meritor's final argument on appeal is that the records are exempt from disclosure under the research exemption of the Act. Intervenor contends Meritor failed to assert this argument below and therefore waived it, but we agree with Meritor that it did raise this issue in the September 26 hearing on its request for a permanent injunction. The records sought are undisputably research results in which Meritor's counsel has a proprietary interest and the records therefore come within that exemption.[17] Accordingly, we hold the trial court abused its discretion in denying Meritor's request for an injunction on this basis.

¶23 Based on our application of the OORA exemptions to the records in this case, we find Meritor proved by clear and convincing evidence that it was entitled to injunctive relief.


A party must prove the following to obtain an injunction: "1) the likelihood of success on the merits; 2) irreparable harm to the party seeking injunction relief if the injunction is denied; 3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and 4) the injunction is in the public interest." . . . The party seeking an injunction must establish the right to injunctive relief "by clear and convincing evidence and the nature of the injury must not be nominal, theoretical or speculative."
Autry, supra, 2018 OK CIV APP 8, at ¶34 (citation omitted). As found by the Federal Magistrate in the August 28, 2018 Order, the question whether the records may be discoverable in litigation in those cases is left to the parties and the courts there. But the risk that Intervenor is attempting to circumvent the discovery rules with an OORA request, for records it admits would not be discoverable had Meritor used a private lab, requires our finding that Meritor is entitled to a permanent injunction barring OU from disclosing the records at issue here. Accordingly, the trial court's order denying that relief is REVERSED AND REMANDED WITH DIRECTIONS to enter a permanent injunction barring disclosure of the records.
GOREE, C.J., and JOPLIN, P.J., concur.
FOOTNOTES
[1] Five suits against Meritor and Textron were consolidated in the United States District Court for the Northern District of Mississippi. Textron dismissed its claims against OU in September 2018. Intervenor had also sued Meritor in Mississippi state court on behalf of residents of that state.
[2] The OORA request was dated June 7, 2018. The request provided, in pertinent part:
. . . I am requesting an opportunity to inspect and obtain copies of public records that relate to any and all groundwater sampling for CSIA . . . analyses of Chlorinated Ethenes from Grenada(,) Mississippi. Please include all documents, chains of custody, reports, analysis, correspondence including written, typed or recorded in any medium. The tested materials were received by OU in June or July 2017.

In 2017 (OU) performed this analysis with University equipment and personnel (including John Allen and Tmasz Kuder). Compounds including cDCE, TCE and PCE were specified. Entities involved included Ramboll, T&M and Thompson Hine. I have some of the emails involved in this project but believe my information is greatly incomplete. . . .
Meritor asserted Ramboll was the employer of Meritor's consulting expert, T&M was another Meritor expert, and Thompson Hine was Meritor's outside counsel.
After learning of the OORA request, an attorney for Ramboll informed OU that two firms representing Meritor and other defendants in the Mississippi litigation hired a Ramboll scientist "to provide litigation related, non-testifying expert consultant services for the benefit of their clients, Meritor, . . . . (OU's) lab work and the related records that are the subject of the referenced records request were performed and generated in the context of that engagement, with (OU) acting as a subconsultant/subcontractor to Ramboll . . . ." Ramboll asserted the records were protected by the privileges for trial preparation materials and for non-testifying consulting experts.
[3] Wolf urged, and the trial court agreed, that Meritor was not truthful with the court when it averred, in its motion for a temporary restraining order, that there was no dispute the materials were privileged. At the September 26 hearing, Meritor counsel Timothy Coughlin testified that statement referred to the work of its retained consulting expert. As we explain below, this dispute is not relevant to our decision.
[4] Intervenor's motions were signed by Marquette Wolf, the same attorney who signed the OORA request. Intervenor also sent a letter to then OU President James Gallogly and Chancellor Glen Johnson requesting their help in obtaining the records sought by Wolf.
[5] It bears noting that although the Act does not expressly limit the right to disclosure of records to Oklahoma residents, these policy and purpose statements suggest the Legislature intended for OORA to benefit Oklahomans rather than residents of other states, such as Intervenor or Wolf, who have no "inherent political power" to exercise in Oklahoma because Oklahoma's state government is not "their government."
[6] 51 O.S.2011 §24A.3 defines "record" as used in the Act:
1. "Record" means all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property. "Record" does not mean:
a. computer software,
b. nongovernment personal effects,
* * *
[7] The unanalyzed water samples would likely fall under the "nongovernmental personal effects" exception to the definition of records. See 51 O.S.2011 §24A.3(1)(b).
[8] In Vandelay Entertainment, LLC v. Fallin, 2014 OK 109, 343 P.3d 1273, the Oklahoma Supreme Court found that the common law and the Oklahoma Constitution afford an executive deliberative process privilege to the Governor which exempts disclosure under the Act, despite the lack of a specific statute expressly providing the privilege.
[9] The record shows LaPat-Polasko no longer works for Ramboll. To its response to Intervenor's motion to dissolve the temporary restraining order, Meritor attached the sworn statement of LaPat-Polasko, in which she averred she had been retained by two law firms to provide litigation-related, non-testifying expert consulting services for the benefit of their clients, including Meritor. LaPat-Polasko further averred that in June 2017, she engaged the OU School of Geology and Geophysics as a subcontractor/subconsultant to perform isotope lab work analysis on groundwater samples. LaPat-Polasko asserted she made her expectation of confidentiality clear to Dr. Kuder when she engaged him to do the testing. LaPat-Polasko attached a cover letter and invoice from OU to LaPat-Polasko for testing of samples from the "Meritor Grenada Project". Another Ramboll employee, Devin Rowe, testified at the hearing on Meritor's motion for a permanent injunction.
[10] It is also questionable whether this court would be bound by a Mississippi Magistrate's interpretation of Oklahoma law incorporating aspects of federal law.
[11] One court has explained:
There are two situations where exceptional circumstances are commonly identified: (1) where "the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery," and (2) where "it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive."
Bank Brussels Lambert v. Chase Manhattan Bank, 175 F.R.D. 34, 44-45 (S.D.N.Y.1997). In this case, Intervenor asserted that other labs could perform the CSIA testing as well as OU's lab.
[12] And, in the case of a disclosed testifying expert, assistants who helped the disclosed expert formulate his opinion will be treated as discoverable in the same way that the disclosed expert is. Derrickson v. Circuit City Stores, Inc., 1999 U.S. Dist. LEXIS 21100, at *18 (D.Md. March 19, 1999). We see no reason why the opposite would not be true in the case of an undisclosed retained consulting expert.
[13] Indeed, the record includes a reply in support of a motion to compel production filed by the plaintiffs in the Mississippi Federal case, primarily concerning whether Mr. Peeples was a retained or non-retained testifying expert. That document, submitted by Wolf among other counsel, includes the statement "Plaintiffs do not assert, as Meritor suggests, that they are entitled to discover the results of the CSIA testing--only that they are entitled to discover what Mr. Peeples knew about the testing and the assumptions made in establishing the parameters and protocols for its execution."
[14] At the September 26 hearing, counsel for Meritor asserted Wolf was attempting to circumvent discovery and Wolf responded "(w)hether that is the case or not, that is not relevant. I have a client that is not even in this case, . . . ."
[15] We quoted Rule 26(b)(4) above. Rule 26(b)(3) provides (emphasis supplied):
(3) Trial Preparation: Materials.
(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
(i) they are otherwise discoverable under Rule 26(b)(1); and
(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
The Oklahoma Discovery Code mirrors the Federal rules. See 12 O.S.2011 §3226. Additionally, we note that in New Hampshire Right to Life v. Director, New Hampshire Charitable Trusts Unit, 169 N.H. 95, 143 A.3d 829 (2016), the New Hampshire Supreme Court held that where the state entity had claimed requested documents were privileged work product in federal litigation, as a matter of comity the state court would apply federal law to determine whether the privilege applied to bar disclosure under that state's open records act.
[16] This rule also protects disclosure of privileged material to those not party to the underlying litigation, as Intervenor claimed to be (despite his state court suit against Meritor).
[17] The Act provides:
In addition to other records that a public body may keep confidential pursuant to the provisions of the Oklahoma Open Records Act, a public body may keep confidential:
1. Any information related to research, the disclosure of which could affect the conduct or outcome of the research, the ability to patent or copyright the research, or any other proprietary rights any entity may have in the research or the results of the research including, but not limited to, trade secrets and commercial or financial information obtained from an entity financing or cooperating in the research, research protocols, and research notes, data, results, or other writings about the research; and
* * *
51 O.S.2011 §24A.19 (emphasis supplied). The parties dispute whether Meritor's counsel or its consulting expert had any proprietary rights in the records. We find persuasive a decision of the Virginia Supreme Court, which found that the research exemption in that state's open records law was intended to avoid putting public institutions at a disadvantage in comparison to private research facilities and held that this interest was not limited to a commercial or financial advantage. American Tradition Institute v. Rector and Visitors of University of Virginia, 287 Va. 330, 756 S.E.2d 435 (2014). The court approved a definition of "proprietary" it had used in an earlier decision: "a right customarily associated with ownership, title, and possession. It is an interest or a right of one who exercises dominion over a thing or property, of one who manages and controls." Id. at 341. The record in this case shows Meritor's counsel hired an expert at Ramboll, who requested and paid for the research conducted at OU. We find Meritor had some proprietary interest in the records.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2018 OK CIV APP 8, 410 P.3d 1017, AUTRY v. ACOSTA, INC.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 67, 832 P.2d 6, 63 OBJ 1444, Norman v. Trison Development Corp.
Discussed
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 2012 OK 60, 299 P.3d 865, COUNTY RECORDS, INC. v. ARMSTRONG
Discussed
 2014 OK 109, 343 P.3d 1273, VANDELAY ENTERTAINMENT, LLC v. FALLIN
Discussed
 2000 OK 52, 8 P.3d 872, 71 OBJ 1769, Farrimond v. Fisher
Discussed at Length
 1985 OK 82, 708 P.2d 1093, Malnar v. Whitfield
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 3226, General Provisions Governing Discovery
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 24A.3, Definitions
Discussed
 51 O.S. 24A.2, Political Power - Public Policy and Purpose of Act
Discussed
 51 O.S. 24A.19, Confidential Nature of Research Information
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA